Argued and submitted December 21, 1988, affirmed March 22, 1989

# STATE OF OREGON,
*Respondent,*

*v.*

# LON SCOTT NEVLER,
*Appellant.*

(87-2388-C-2; CA A48693)

770 P2d 956

Steven V. Humber, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Graber, Presiding Judge, and Riggs and Edmonds,* Judges.

GRABER, P. J.

---

* Edmonds, J., *vice* Warden, J., retired.

## GRABER, P. J.

Defendant appeals his convictions for manufacture and possession of a controlled substance, ORS 475.992(1), (4), asserting that the trial court erred when it denied his motion to suppress. We affirm.

■     Defendant lives on 40 acres that he owns near Ashland, along the border of the Rogue River National Forest.[1] There are no fences or other barriers around his land, and there are no "No Trespassing" signs or other indications that defendant wishes to exclude the general public. Except for his house and a nearby garden, the land is unimproved and mountainous.

On August 14, 1987, two sheriff's deputies found a "marijuana garden" on federal land while conducting helicopter surveillance there. At about 1:00 p.m. on the same day, they decided to lead "ground crews" from another location on federal land to the marijuana garden. They flew on a direct course down a natural "drainage" or small creek. That took them over defendant's land; while flying over it, the deputies looked down and saw a number of growing marijuana plants. They also saw a man outside the house and believed that he had seen them. They had the helicopter land near defendant's property, and one deputy got out. The helicopter then picked up two other deputies nearby, brought them back to the previous landing spot, and let them out also. The first deputy walked up a road to defendant's house; the other two walked up a wash on defendant's land and were the first to arrive at the house.

The deputies met defendant at his house, told him that they had seen marijuana from the air, informed him of his *Miranda* rights, and asked his permission to search the land for marijuana. They told defendant that, if he did not give permission, they "would have to go back into town and get a

---

[1] Both defendant and the state asked the trial court to make explicit findings of fact, but the court refused. That refusal was improper. *See State v. Wise*, 305 Or 78, 81 n 2, 749 P2d 1179 (1988). However, with the exception of the height of the helicopter when it passed over defendant's property, the facts are undisputed, and that exception does not affect our decision. We will therefore decide the case on the record presented rather than remand it for proper findings. *See Ball v. Gladden*, 250 Or 485, 443 P2d 621 (1968).

search warrant and secure the property just so that the evidence wouldn't be destroyed." Defendant then consented to a search of the land but not of the house. The deputies removed more than forty marijuana plants during the search of the land.

Defendant moved to suppress the evidence on the ground that the search violated the Fourth Amendment and Article I, section 9, of the Oregon Constitution.[2] The trial court denied the motion. We first consider the state constitutional issue.

■      The deputies' initial view of the marijuana was not a search, because it was not the result of a purposeful effort to observe defendant's property. It was an inadvertent observation. The absence of purposive scrutiny distinguishes this case from *State v. Ainsworth,* 95 Or App 240, 770 P2d 58 (1989). The deputies were entitled to use the information that they learned when they flew over defendant's land.

■      Further, the deputies did not violate the state constitution when they thereafter entered defendant's property on foot to search for and seize the marijuana plants that grew along the drainage. In *State v. Dixson/Digby,* 307 Or 195, 766 P2d 1015 (1988), the Supreme Court considered the "open field" doctrine under Article I, section 9. It held that, although one has a privacy interest in all real property that one has a right to occupy, property beyond the curtilage is not protected by Article I, section 9, unless the occupier has manifested a desire for privacy. The court rejected the holding in *Oliver v. United States,* 466 US 170, 104 S Ct 1735, 80 L Ed 2d 214 (1984), that an "open field" is not protected from searches in any circumstance, but said that an

> "individual's privacy interest in land he or she has left unimproved and unbounded is not sufficient to trigger the protections of Article I, section 9. * * * A person who wishes to preserve a constitutionally protected privacy interest in land outside the curtilage must manifest an intention to exclude the public by erecting barriers to entry, such as fences, or by posting signs." 307 Or at 211.

---

[2] In the trial court, defendant emphasized Fourth Amendment cases, although on appeal he relies primarily on the state constitution. He did, nevertheless, sufficiently raise the state issue below, and we will therefore consider it. *See State v. Kennedy,* 295 Or 260, 265-267, 666 P2d 1316 (1983).

Under *Dixson/Digby,* the officers who walked up the wash did not invade defendant's constitutionally protected interests. They intruded only onto land that defendant had left "unimproved and unbounded" with no manifestation of an intention to exclude the public.[3] Assuming that he could, nonetheless, manifest an intent specifically to exclude the officers by refusing their request for permission to search further, he did not. Instead, he voluntarily consented. The officers did not exploit any previous illegal action in obtaining the consent. *See State v. Williamson,* 92 Or App 426, 759 P2d 288, *rev allowed* 307 Or 245 (1988).

The trial court correctly denied the motion to suppress under Article I, section 9. The search also did not violate the Fourth Amendment. *Florida v. Riley,* ___ US ___, 109 S Ct 693, 102 L Ed 2d 835 (1989); *California v. Ciraolo,* 476 US 207, 106 S Ct 1809, 90 L Ed 2d 210 (1986); *Oliver v. United States, supra.*

Affirmed.

---

[3] Although defendant argues otherwise, the marijuana was not within the curtilage of the home, even under the broad scope that we gave that concept in *State v. Russo,* 68 Or App 760, 683 P2d 163 (1984). The marijuana plants were "strung down the drainage" on the unimproved, wooded hillsides, from 250 to 1000 feet from the house.