Argued and submitted October 4, 1989, the decision of the Court of Appeals reversed
and the judgments of the circuit court affirmed November 26, 1990

## STATE OF OREGON,
*Petitioner on Review,*

*v.*

## CHERYL LYNNE AINSWORTH,
*Respondent on Review.*

(85-3451-C-2; CA A41480 (Control))

## STATE OF OREGON,
*Petitioner on Review,*

*v.*

## JOHN AINSWORTH,
*Respondent on Review.*

(85-3452-C-2; CA A41596; SC S36097)
(Cases Consolidated)

801 P2d 749

CJS, Searches and Seizures § 1.

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the petition were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Robert J. McCrea, Eugene, argued the cause for respondents on review.

Before Peterson, Chief Justice, and Linde,** Carson, Jones,*** Gillette, Van Hoomissen, and Fadeley, Justices.

CARSON, J.

** Linde, J., retired January 31, 1990.
*** Jones, J., resigned April 30, 1990.

## CARSON, J.

The issue in this case is whether purposive aerial observation by police constitutes an "unreasonable search" under Article I, section 9, of the Oregon Constitution.[1] We conclude that a purposive aerial observation is not, simply by virtue of either of these characteristics, a search for constitutional purposes. Because we determine that defendants' constitutional rights were not violated in this case, we reverse the decision of the Court of Appeals and affirm the trial court's judgments of conviction.

## FACTS

Defendants, husband and wife, live on approximately 14 acres of rural property in Jackson County. Their house is located roughly in the center of the rectangular-shaped property. The entire part of the property behind the house is enclosed by a four-foot high animal fence topped with two strands of barbed wire. A barn and a poultry pen are in the enclosed area. The boundaries of the property are posted with "No Trespassing" signs. The marijuana plants that gave rise to this criminal prosecution were growing about 300 feet behind the house in a heavily wooded area. Most of the plants were under two large trees, 45 to 50 feet in height. Defendant husband testified at the suppression hearing that the plants specifically were placed so that they could not be seen from above or from outside the property.

On September 10, 1985, acting on a tip that there was marijuana growing on defendants' property, two deputy sheriffs chartered a helicopter to fly over the property and verify the tip. While the helicopter was over defendants' property, one of the deputies observed the marijuana plants. The helicopter circled three or four times and descended somewhat for the second deputy to confirm the observation. There was conflicting testimony regarding the helicopter's altitude while over defendants' land. One deputy testified that the altitude

---

[1] Article I, section 9, of the Oregon Constitution provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

was "pretty close to four or five hundred feet"; defendants' son testified that the helicopter was about "15 feet above the tree line."

Based upon the deputies' observations during the helicopter flight, a search warrant was obtained. Upon execution of the warrant, sheriff's deputies seized 17 marijuana plants found growing in plastic buckets. Dried marijuana plants were found elsewhere on the property.

Defendants were indicted for manufacture and possession of a controlled substance (marijuana).[2] Defendants moved to suppress all evidence derived from the aerial observation and subsequent warranted search. The trial court denied the motion. After a trial to the court on stipulated facts, defendant husband was convicted of manufacture and possession, and defendant wife was convicted of possession.

Defendants appealed their convictions, arguing that the aerial observation used to support the issuance of the search warrant was a warrantless search in violation of Article I, section 9, of the Oregon Constitution. Finding that the aerial observation constituted a warrantless search and that no exception to the warrant requirement applied, a divided Court of Appeals, *in banc,* reversed and remanded, holding that the evidence must be suppressed. *State v. Ainsworth,* 95 Or App 240, 770 P2d 58 (1989).

## ANALYSIS

At the outset, it is important to emphasize the scope of the protection guaranteed by Article I, section 9. That provision does not protect citizens from all forms of governmental observation, but only from unreasonable "searches" (and seizures). It follows, therefore, that the threshold question in any Article I, section 9, search analysis is whether the police conduct at issue is sufficiently intrusive to be classified as a search. *State v. Campbell,* 306 Or 157, 162-63, 759 P2d 1040 (1988). As explained below, because the police conduct at issue in this case was not an Article I, section 9, "search," we do not reach the issue of whether it was unreasonable.[3]

---

[2] Defendants also were indicted for possession of cocaine. The trial court suppressed the seizure of the cocaine. That ruling is not before us.

[3] The Court of Appeals held that the deputies' conduct was not a search under the Fourth Amendment. *State v. Ainsworth,* 95 Or App 240, 243 n 2, 770 P2d 58 (1989). Neither party disputes that holding before this court, and we do not address it.

Article I, section 9, protects privacy and possessory interests from unreasonable governmental intrusion. *State v. Tanner,* 304 Or 312, 319-20, 745 P2d 757 (1987); *see State v. Owens,* 302 Or 196, 206, 729 P2d 524 (1986). "The constitutional provisions against unreasonable searches and seizures do not protect a right to keep any information, no matter how hidden or 'private,' secret from the government. What the provisions forbid are unreasonable searches and seizures, *i.e.,* certain *acts* of the government." *State v. Campbell, supra,* 306 Or at 166. (Emphasis in original.) (Citations omitted.) Thus,

"[t]he interest is not one of freedom from scrutiny in general, because, if that were the case, any form of scrutiny would infringe a privacy interest and thereby be considered a search. A court has never held, for example, that a police officer engages in a search by making unaided observations from a public place, and an individual therefore cannot be said to have a constitutionally protected interest in freedom from such scrutiny." *State v. Campbell, supra,* 306 Or at 170.

As the above-quoted passage suggests, this court has interpreted Article I, section 9, to mean that a police officer at a lawful vantage point who observes contraband or illegal conduct has not conducted a search in the constitutional sense. *See generally* 1 LaFave, Search and Seizure § 2.2(a) (2d ed 1987) (discussion of Fourth Amendment "open view" doctrine). In *State v. Slowikowski,* 307 Or 19, 23, 761 P2d 1315 (1988), for example, this court began its Article I, section 9, analysis by asking "whether the officers were *legitimately on the premises* when the marijuana was detected." (Emphasis added.) That the officers "had a right to be where they were," *id.* at 24, was a determinative prerequisite to our conclusion that there was no Article I, section 9, search. We stated the rationale behind this principle in *State v. Campbell, supra,* 306 Or at 170:

"The reason that the observations of a police officer who is standing in a public place infringe no privacy interest may be that there is no generally recognized freedom from such scrutiny by private individuals. Such observations by the police would thus not significantly reduce the freedom from scrutiny available to 'the people.' "

The particular mode of transportation that officers use to attain their lawful vantage point is of no constitutional

significance.[4] Whether on foot, by motor vehicle, boat, tall building, promontory, air balloon, or aircraft[5]—the manner is unimportant if the officers are at a location where they are lawfully entitled to be. Because there is no evidence that the sheriff's deputies in this case were violating any common law or statutory rights of defendants, nor any rules, regulations, or other legal restrictions,[6] they lawfully were in the air above

---

[4] It is important to distinguish between the mode of transportation used by officers to reach a vantage point and the lawfulness of the vantage point. In some cases, including this one, the means used to attain the vantage point is relevant to a determination of the lawfulness of the vantage point. Thus, an aerial observation from a given altitude may be an observation from a lawful vantage point if the observer is in a helicopter, while it might not be if the observer is in an airplane. But whether the observer *arrived* at that point in three-dimensional space by helicopter or airplane normally is irrelevant to the determination of the lawfulness of the vantage point.

[5] The concept of "technological enhancement" is not applicable here. Cases involving the use of methods to enhance human perceptual capabilities (*e.g., State v. Slowikowski,* 307 Or 19, 761 P2d 1315 (1988); *State v. Campbell,* 306 Or 157, 759 P2d 1040 (1988); *State v. Louis,* 296 Or 57, 672 P2d 708 (1983); *State v. Faulkner,* 102 Or App 417, 794 P2d 821, *rev den* 310 Or 422 (1990); *State v. Carter/Grant,* 101 Or App 281, 790 P2d 1152, *rev allowed* 310 Or 281 (1990)) are not relevant. There is no evidence that the observations by the sheriff's deputies in this case were made with other than the naked eye. That the observations were made from a helicopter rather than from a mountaintop cannot have constitutional significance. We do not address the situation where police officers, from a lawful vantage point, make observations with equipment that enhances their perceptual capabilities.

[6] Under the Federal Aviation Act, United States airspace is analogous to public highways. 49 USC § 1304 (Supp V 1983-1988) provides, in part:

"There is hereby recognized and declared to exist in behalf of any citizen of the United States a public right of freedom of transit throughout the navigable airspace of the United States."

Minimum allowable altitudes for aircraft are governed by Federal Aviation Administration regulations which provide:

"Except when necessary for takeoff or landing, no person may operate an aircraft below the following altitudes:

"(a) *Anywhere.* An altitude allowing, if a power unit fails, an emergency landing without undue hazard to persons or property on the surface.

"(b) *Over congested areas.* Over any congested area of a city, town, or settlement, or over any open air assembly of persons, an altitude of 1,000 feet above the highest obstacle within a horizontal radius of 2,000 feet of the aircraft.

"(c) *Over other than congested areas.* An altitude of 500 feet above the surface except over open water or sparsely populated areas. In that case, the aircraft may not be operated closer than 500 feet to any person, vessel, vehicle, or structure.

"(d) *Helicopters.* Helicopters may be operated at less than the minimums prescribed in paragraph (b) or (c) of this section if the operation is conducted without hazard to persons or property on the surface. In addition, each person operating a helicopter shall comply with routes or altitudes specifically prescribed for helicopters by the Administrator." 14 CFR § 91.79 (1990).

There is no similar Oregon statute. The only relevant provision of Oregon law gener-

defendants' land.[7] Because the privacy interest protected by Article I, section 9, is the "privacy to which one has a *right,*" *State v. Campbell, supra,* 306 Or at 164 (emphasis in original), the sheriff's deputies did not impermissibly intrude on defendants' privacy interest. Their actions did not constitute a search within the meaning of Article I, section 9.

This result is consonant with the result reached by the United States Supreme Court in a similar aerial observation case, *California v. Ciraolo,* 476 US 207, 215, 106 S Ct 1809, 90 L Ed 2d 210 (1986).[8] That Court held: "The Fourth Amendment simply does not require the police traveling in the public airways at this altitude to obtain a warrant in order to observe what is visible to the naked eye." (Footnote omitted.) *See Dow Chemical Co. v. United States,* 476 US 227, 106 S Ct 1819, 90 L Ed 2d 226 (1986) (evidence obtained from aerial surveillance is admissible if the government aircraft flies in public navigable airspace and the object of the search is in open view on the ground below). Indeed, in its most recent aerial observation case, the United States Supreme Court stressed the importance of the lawfulness of the police vantage point:

> "We would have a different case if flying at that altitude had been contrary to law or regulation. But helicopters are not bound by the lower limits of the navigable airspace allowed to other aircraft. Any member of the public could legally have been flying over Riley's property in a helicopter at the altitude of 400 feet and could have observed Riley's greenhouse. The

---

ally affecting operation of aircraft is ORS 837.080(1)(b), which provides generally that operation of an aircraft in "a careless manner so as to endanger the life or property of another" is a Class B misdemeanor.

[7] Although in this case the sheriff's deputies viewed defendants' land from a lawful vantage point, an aerial vantage point is not inherently a lawful one. The means used to examine may become so intrusive as to constitute a nuisance, inverse condemnation, tortious invasion of privacy, or some other violation of a defendant's legal rights. *See, e.g., Atkinson et al v. Bernard, Inc.,* 223 Or 624, 355 P2d 229 (1960) (flights from adjacent airport may so interfere with landowners' use and enjoyment of their land as to constitute nuisance, but not all such flights so qualify). In such a case, the police officers might not be observing from a lawful vantage point. However, because the vantage point *was* lawful in this case, we do not address the effect of an unlawful vantage point on suppression of evidence so observed.

[8] The federal aerial observation cases turn on the question of whether the defendant had a reasonable expectation of privacy. In contrast, under Article I, section 9, this court asks whether a police officer's conduct infringes upon the privacy to which a defendant has a right. Although the ultimate question that must be answered to determine whether police have conducted a search differs, many of the issues raised by the analyses are similar.

police officer did no more. This is not to say that an inspection of the curtilage of a house from an aircraft will always pass muster under the Fourth Amendment simply because the plane is within the navigable airspace specified by law. But it is of obvious importance that the helicopter in this case was *not* violating the law * * *." *Florida v. Riley,* 488 US 445, 451, 109 S Ct 693, 102 L Ed 2d 835 (1989). (Emphasis in original.) (Footnote omitted.)

Defendants argue the importance of, and the Court of Appeals emphasized, the purposive nature of the observation made by the sheriff's deputies. In concluding that there was an unlawful search in this case, the Court of Appeals relied upon language in *State v. Slowikowski, supra,* that there was no search in that case because there was no "purposive intrusion into a protected area." 307 Or at 27. While it is true that absence of a purposive intrusion into a protected area is some indication that no search has occurred, it does not follow that purposive police action, alone, transforms a permissible observation into an unconstitutional search. As this court also stated in *Slowikowski,* "not every purposive action by a police officer is a 'search,' at least in the constitutional sense." *Id.* It is the location and behavior of the police officer, not the officer's motivations, that determine the existence of a search for Article I, section 9, purposes. "In order to decide whether the government has searched, we must look to the nature of the *act* asserted to be a search." *State v. Campbell, supra,* 306 Or at 170. (Emphasis added.) We agree with the analysis of the United States Supreme Court:

> "That the observation from aircraft was directed at identifying the plants and the officers were trained to recognize marijuana is irrelevant. Such observation is precisely what a judicial officer needs to provide a basis for a warrant. Any member of the public flying in this airspace who glanced down could have seen everything that these officers observed." *California v. Ciraolo, supra,* 476 US at 213.

As the state points out, overemphasis of "purposiveness" can lead to inconsistent results. For example, in *State v. Nevler,* 95 Or App 694, 770 P2d 956 (1989), the Court of Appeals addressed the constitutionality of an aerial observation that led to the seizure of marijuana plants. In that case, sheriff's deputies in a helicopter were leading ground crews to a "marijuana garden" already discovered on federal land when

the deputies passed over the defendant's land and spotted marijuana growing there. The Court of Appeals held:

"The deputies' initial view of the marijuana was not a search, because it was not the result of a *purposeful effort* to observe defendant's property. It was an *inadvertent* observation. The absence of *purposive scrutiny* distinguishes this case from [the present case]. The deputies were entitled to use the information that they learned when they flew over defendant's land." 95 Or App at 697. (Emphasis added.)

Under the Court of Appeals' reasoning in that case, the deputies' actions—identical in all respects to actions that could constitute a search—were found not to be a search simply because of the deputies' motivation. Article I, section 9, prohibits certain governmental action, not certain governmental states of mind. The Oregon Constitution does not require an inquiry into the observing officer's thoughts to determine whether the officer's conduct unconstitutionally violates a defendant's Article I, section 9, rights.[9]

The state, defendants, and each of the Court of Appeals' opinions in this case suggest that there are many factors to take into account in determining whether aerial observation constitutes a search under Article I, section 9. Although they vary in terms of the number of elements to be considered and the emphasis to be placed on each element, all are unworkable as guidelines for law enforcement activities. "The remaining question is whether it is possible to fashion a workable test to enable the police to determine whether a particular intrusion constitutes a search under the state constitution. It is." *State v. Dixon/Digby,* 307 Or 195, 211, 766 P2d 1015 (1988). We hold that a police officer's unaided observation, purposive or not, from a lawful vantage point is not a search under Article I, section 9, of the Oregon Constitution.

---

[9] In *Horton v. California,* ____ US ____, 110 S Ct 2301, 110 L Ed 2d 112 (1990), the United States Supreme Court held that the Fourth Amendment does not prohibit the warrantless seizure of evidence in plain view even though the discovery of the evidence was not inadvertent, thereby clarifying the "inadvertence" requirement of the plain view doctrine. Although that case involved a seizure under the Fourth Amendment, we agree with the Supreme Court's de-emphasis of the police officer's motivation. As that Court stated, "evenhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer. The fact that an officer is interested in an item of evidence and fully expects to find it in the course of a search should not invalidate its seizure * * *." *Horton v. California, supra,* ____ US at ____ (slip op at 9).

## DISPOSITION

In the circuit court, defendants challenged the accuracy of the affidavit upon which the search warrant was based as to the altitude of the deputies' helicopter. They also argued generally that there was no probable cause for the issuance of the warrant. The circuit court found that "the search of the defendants' premises for marijuana was pursuant to a search warrant and there was lawful probable cause for the issuance of a search warrant."

ORS 133.693(1) provides, in part, that in seeking suppression of evidence seized pursuant to a search warrant, a defendant may challenge the "good faith, accuracy and truthfulness" of the person making an affidavit in support of the search warrant. ORS 133.693(3) provides that in such a challenge, the defendant has the burden of proving, by a preponderance of the evidence, the lack of good faith, accuracy and truthfulness of the affiant. Defendants never argued that the deputies were not where they had a right to be. Accordingly, as the trial court found, defendants failed to meet their burden.

Unless this court can say that the circuit court's implicit finding, *i.e.,* that the deputies were in a place where they had a right to be, is unsupported by evidence in the record, the court must sustain the circuit court's conclusion. *Ball v. Gladden,* 250 Or 485, 487, 443 P2d 621 (1968). In this case, there is evidence to sustain that conclusion. The decision of the Court of Appeals is reversed, and the judgments of the circuit court are affirmed.