The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Bernard M. HENDERSON,
Defendant–Appellant.

No. 91CA0151.

Colorado Court of Appeals,
Div. II.

Jan. 14, 1993.

Rehearing Denied April 22, 1993.

Certiorari Pending June 1, 1993 (93SC339).

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, sec. 5(3), and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Roger G. Billotte, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Douglas D. Barnes, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge RULAND.

Defendant, Bernard M. Henderson, appeals the judgment of conviction entered upon jury verdicts finding him guilty of cultivation of marihuana and conspiracy to cultivate marihuana. We affirm.

Defendant was arrested after a police search of a shed behind his home revealed roots, stalks, leaves, and other remnants of marihuana plants along with cultivation equipment and fertilizer. Scales, plastic bags, a pipe, and a bag of marihuana were found inside the house.

Prior to the search, the police had received two anonymous telephone calls reporting that defendant was growing marihuana in a shed behind his residence at a specified address. Officers assigned to a drug task force conducted limited surveillance of the residence but no illegal behavior was observed.

Thereafter, the police received a third call from the informant stating that he had been to defendant's residence with another person when defendant retrieved a five-foot-tall marihuana plant from the shed and sold it to the informant's companion.

The drug task force had previously arranged for a helicopter trip that afternoon with a pilot/news reporter for a television station. The station agreed to furnish a

pilot/reporter to fly several officers over a suspected drug manufacturing lab in exchange for which the station was authorized to videotape the investigation. The officers asked the pilot to fly-over defendant's residence as well.

During this "fly-over" involving 4 or 5 passes over defendant's residence, the officers noticed that a section of a shed on the property was roofed with plastic sheeting beneath which green leafy material was visible. The officers took photographs and a news photographer videotaped the scene for use in a news broadcast.

One of the officers had special education in drug identification and previous experience flying in helicopters. He estimated that the "fly-over" took place at an altitude of between 500 and 700 feet. He also described the green leafy material as consistent with the appearance of grown marihuana plants.

Using the information provided by the phone tips and the observations made during the "fly-over," the officers obtained a search warrant and conducted a "no knock" raid later that day. The house was unoccupied when police arrived, and the suspected marihuana plants had been removed, leaving only stalks and other remnants.

### I.

Defendant challenges the denial of his motion to suppress the evidence seized from the residence asserting a violation of his rights under both the Fourth Amendment and Colo.Const. art. II, § 7. We perceive no error in the trial court's ruling.

### A.

Defendant argues that the "fly-over" of his home was violative of his rights of privacy under the United States Constitution because the prosecution failed to meet its burden to establish an exception to the search warrant requirement. We disagree and conclude that no search occurred.

■ Warrantless searches are presumptively unreasonable. *United States v. Karo*, 468 U.S. 705, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984); *People v. Thiret*, 685 P.2d 193 (Colo.1984). And, the burden of proving an exception from the warrant requirement falls upon the prosecution. *People v. Lorio*, 190 Colo. 373, 546 P.2d 1254 (1976).

However, defendant carries the burden to first demonstrate that a search has indeed taken place. *See People v. Hillman*, 834 P.2d 1271 (Colo.1992). And, as to this issue, we view the opinion of the United States Supreme Court in *Florida v. Riley*, 488 U.S. 445, 109 S.Ct. 693, 102 L.Ed.2d 835 (1989) as dispositive.

In *Riley*, the record revealed that the defendant lived in a mobile home located on five acres of rural property. A greenhouse was located near the mobile home. Two sides of the structure were enclosed and trees and shrubs otherwise obscured any view of the greenhouse from the surrounding property. However, two panels comprising approximately 10% of the roof area were missing.

Based upon an anonymous tip to law enforcement officers, a helicopter was dispatched to fly-over the property. The aircraft made two passes over the greenhouse at an altitude of 400 feet and an officer observed through the roof and wall openings what he thought was growing marihuana. A search warrant was then obtained and defendant's property was searched, during the course of which marihuana was seized.

In response to defendant's challenge to the search warrant, a plurality of the court concluded that the aerial inspection was constitutionally permissible. Relying upon the analysis in *California v. Ciraolo*, 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986), the court held that no search was involved because the aircraft was flying in navigable airspace for private and commercial aircraft at the time of the officer's observations.

■ The court made no distinction between fixed wing aircraft and helicopters for purposes of its analysis. Further, the court did not view the fact that more than one pass was made over the property as

significant. Conversely, the court emphasized the fact that the helicopter was not in violation of FAA regulations on altitude at the time of the fly-over. Finally, the court also noted that the record failed to indicate that helicopter flights were "unheard of" in that particular county.

Here, the prosecution presented testimony to establish, and the trial court found, that the helicopter flew at an elevation of 500 to 700 feet—a permissible altitude under current FAA regulations. *See* 14 CFR § 91.79 (1988). Further, there was testimony to support, and the trial court found, that a specially trained officer was able to observe leafy material that had the appearance of marihuana through the translucent plastic material in the roof.

Finally, even though the evidence failed to address whether this type of flight was consistent with any special requirements of the FAA administrator relative to routes or altitudes for the specific geographic area, we do not view that requirement as included in the prosecution's burden of proof. This is because, as we read the majority and concurring opinions together in *Florida v. Riley, supra,* defendant carries the burden to establish a legal violation by the helicopter in this regard.

■ Contrary to his contention, the fact that defendant placed plastic over a section of his shed which partially obstructed the interior, does not create a reasonable expectation that the contents would remain private. The mere fact that a person has taken measures to restrict public view of his activities does not "preclude an officer's observations from a public vantage point where he has a right to be and which renders the activities clearly visible." *California v. Ciraolo,* 476 U.S. at 213, 106 S.Ct. at 1812, 90 L.Ed.2d at 216.

### B.

Defendant argues that *People v. Pollock,* 796 P.2d 63 (Colo.App.1990) mandates reversal of the trial court's order. In *Pollock,* a panel of this court concluded that a helicopter hovering over a home at 200 feet violated defendant's reasonable expectations of privacy. The court relied upon a finding by the trial court that non-investigatory helicopter traffic in that area as low as 500 to 200 feet was rare at best.

Here, however, the trial court specifically found with record support that the "fly-over" was factually distinguishable from the one in *Pollock* both as to height, noise, and disturbance. As a result, we conclude that *Pollock* has no application here.

### II.

■ Our supreme court has yet to address the issue whether fly-overs constitute searches under the Colorado Constitution. *See Bartley v. People,* 817 P.2d 1029 (Colo. 1991). Defendant contends that we should interpret the Colorado Constitution as providing more protection against this type of viewing by law enforcement than that afforded under the United States Constitution. We disagree.

We recognize that, in specified circumstances, our supreme court has concluded that the Colorado Constitution affords more protection against intrusion by law enforcement than that provided under the United States Constitution. *See People v. Oates,* 698 P.2d 811 (Colo.1985) (beepers in commercially purchased, sealed containers); *People v. Corr,* 682 P.2d 20 (Colo.1984) (telephone toll records); *People v. Sporleder,* 666 P.2d 135 (Colo.1983) (telephone pen registers).

The analysis applied by our supreme court under the Colorado Constitution begins with whether law enforcement has, in fact, conducted a search as that term is understood in the constitutional sense. This inquiry, in turn, focuses on whether the defendant has a legitimate expectation of privacy in the area where the alleged intrusion occurred. And, in this context, our supreme court has held that "there is no invasion of privacy in the observation of that which is plainly visible to the public." *Hoffman v. People,* 780 P.2d 471, 474 (Colo.1989); *see also State v. Ainsworth,* 310 Or. 613, 801 P.2d 749 (1990) (upholding fly-over viewing under the Oregon Constitution).

·Indeed, both *California v. Ciraolo, supra,* and *Florida v. Riley, supra,* have been cited with approval by our supreme court in the context of addressing the question whether a search occurred. *See Hoffman v. People, supra; People v. Bartley,* 791 P.2d 1222 (Colo.App.1990); *aff'd on other grounds, Bartley v. People, supra.*

Under the applicable precedent and the record before us, we decline to conclude that the helicopter fly-over constituted a search under the Colorado Constitution.

### III.

■ Defendant next contends that the search warrant was invalid because the anonymous tips coupled with the observations obtained in the flight over his property were insufficient to support a finding of probable cause. We agree with the trial court's conclusion that nothing was presented to make the allegations in the search warrant affidavit incredible as a matter of law.

"Corroboration of an anonymous tip with facts learned by an investigating officer is sufficient for the practical, common-sense judgment called for in making a probable-cause determination." *People v. Diaz,* 793 P.2d 1181, 1183 (Colo.1990). Independent investigation from the helicopter discovered the presence of large green leafy objects in a shed from where the informant indicated defendant had retrieved a large marihuana plant.

Defendant argues that there are numerous legal large green leafy plants which could be grown in plastic roofed areas and that, therefore, the aerial observations made were insufficient to support allegations of marihuana cultivation. We are not persuaded.

The possibility that defendant's shed might seem innocent to an ordinary observer does not diminish the significance it would have to an experienced drug enforcement officer. *See People v. Hill,* 690 P.2d 856 (Colo.1984). The officer, relying on his experience and education, suspected that the appearance of defendant's shed was indicative of marihuana cultivation and that

the plants which he observed were marihuana plants.

While photos taken during the aerial reconnaissance and the videotape do not display the plants with clarity, it was the officer's account of his observations, and not the photographs, which supplied the support for the warrant. *See California v. Ciraolo, supra.*

### IV.

Defendant also asserts that the trial court erred by granting the pilot/reporter's motion to quash the subpoena summoning him to testify at the suppression hearing. The motion was based upon the Colorado Privilege for Newspersons Statute, § 13–90–119, C.R.S. (1992 Cum.Supp.).

Defendant contended that the statute did not apply because the pilot was asked by the officers to conduct the flight. Defendant argued, therefore, that he should be permitted to question the pilot about the helicopter's altitude and flight path. The trial court found that this information was protected, and we agree.

The broad definitions of news reporter under § 13–90–119(1)(c), C.R.S. (1992 Cum. Supp.), and news information under § 13–90–119(1)(b), C.R.S. (1992 Cum.Supp.) apply to the pilot and to the information gathered during the flight. As pertinent here, a "newsperson" includes "any member of the mass ... media who is engaged to gather ... news information for dissemination to the public...." "News information" includes any knowledge or videotapes obtained while one is engaged as a newsperson. As pertinent here, "source" includes "any means by or through which news information is received." Section 13–90–119(1)(f), C.R.S. (1992 Cum.Supp.).

Moreover, although § 13–90–119(2)(b), C.R.S. (1992 Cum.Supp.) provides that news information already released to the public is not protected, the broadcast videotape did not disclose the altitude or the precise flight path.

Relying on § 13–90–119(3), C.R.S. (1992 Cum.Supp.), which provides that relevant information is not protected, under certain

circumstances, if it is unavailable from any other source, defendant maintains that he should have been able to question the pilot about the altitude. We disagree.

 Given this statutory definition of news "sources," we are precluded from creating an exception for information obtained by a newsperson in connection with assisting law enforcement officers. Furthermore, defendant did not meet his burden of demonstrating that this information was unavailable from any other source. Indeed, one of the officers on the flight was experienced with helicopters and was able to make an estimate of the altitude. Defendant failed to present any information which suggested that the officer's estimate was grossly inaccurate or that the flight path may have violated any applicable regulation.

The judgment is affirmed.

PIERCE and REED, JJ., concur.