516 July 2, 2025 No. 579

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

SENGDARA NAKHIENGCHAHN,
*Defendant-Appellant.*

Polk County Circuit Court
21CR43585; A180351

Rafael A. Caso, Judge.

Submitted February 12, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Matthew Blythe, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Michael A. Casper, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

SHORR, P. J.

Reversed and remanded.

**SHORR, P. J.**

Defendant appeals from a judgment of conviction for unlawful manufacture of marijuana entered following defendant's conditional guilty plea, raising two assignments of error. In her first assignment of error, defendant argues that the police's warrantless aerial surveillance of her property constituted an unlawful search in violation of Article I, section 9, of the Oregon Constitution, such that the evidence obtained as a result should have been suppressed. For the reasons discussed below, we agree that the aerial surveillance constituted an unlawful search. Because of our disposition of the first assignment, we need not reach defendant's second assignment of error. Accordingly, we reverse and remand.

In June 2021, Oregon State Police Sergeant Bechtel took part in an aerial surveillance operation investigating a suspected multicounty marijuana operation. Defendant's property was not one of the locations targeted in that investigation. But, while flying over defendant's property, Bechtel noticed "what looked *** to be a massive agricultural operation" that he suspected "was likely a marijuana grow." The plane was at an altitude between 3,500 and 5,000 feet. Using a Wescam MX-10 camera mounted to the airplane, Bechtel recorded video footage of defendant's property, which he then provided to Detective Lorence with the Polk County Sheriff's Office. With the consent of defendant's neighbor, Lorence later photographed cannabis plants from the ground of the neighbor's property. Based on the aerial and ground photos, Lorence applied for and obtained a search warrant for defendant's property. Officers executed the search warrant, seized some of defendant's personal property, and arrested defendant.

Defendant was charged by indictment with one count of unlawful manufacture of marijuana and one count of unlawful possession of marijuana. Defendant moved to suppress all evidence gathered as a result of the surveillance flight and the search warrant. The trial court denied the motion. Defendant subsequently entered a conditional guilty plea on the manufacturing count, reserving her right to challenge the court's denial of her pretrial motion. The

court accepted the plea and dismissed the possession charge as indicated in the plea agreement. This appeal followed.

In defendant's first assignment of error, she argues that the trial court erred in denying her motion to suppress the evidence obtained from her property. She asserts that the warrantless aerial surveillance conducted by the police constituted an unlawful search under Article I, section 9, of the Oregon Constitution. We review a trial court's denial of a motion to suppress for legal error, and we are bound by the trial court's factual findings "if there is constitutionally sufficient evidence in the record to support those findings." *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993).

Article I, section 9, guarantees individuals the right "to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure." That provision protects citizens from police conduct that is "sufficiently intrusive to be classified as a search." *State v. Ainsworth*, 310 Or 613, 616, 801 P2d 749 (1990). The Supreme Court has held that "a police officer's unaided observation, purposive or not, from a lawful vantage point is not a search under Article I, section 9, of the Oregon Constitution." *Id.* at 621. Accordingly, we have concluded that aerial surveillance from a lawful altitude does not constitute a search if the officer "positively identified the marijuana plants on defendant's property with no visual aids." *State v. Rodal*, 161 Or App 232, 237, 985 P2d 863 (1999). Nor does the use of technology "merely to record what could be seen and had been seen" without the technology constitute an unlawful search. *Id.* (brackets omitted).

At the outset, we note that defendant does not contest that the flyover was conducted at a lawful altitude. She acknowledges that, if the officer could see cannabis plants from that altitude without visual aid, it would not constitute a search, nor would subsequent use of a camera to document what he had already seen constitute a search. However, defendant asserts that the officer was not able to identify marijuana from the plane by the naked eye, and therefore his use of the mounted camera constituted a search because it provided qualitatively different information than could be observed plainly. The state maintains that the camera did

not provide materially different information than what the officer had seen with his own eyes.[1]

We begin with the facts relevant to whether Bechtel identified cannabis plants from the plane without visual aid. Bechtel testified at both defendant's and a codefendant's suppression hearings about the aerial surveillance operation.[2] He stated that he was very familiar with looking at aerial images of marijuana operations. He explained that lawful agricultural operations, "when they invest in greenhouses, sometimes called hoop houses, they tend to invest in ones that will weather a winter in Oregon." As they flew over defendant's property, he saw greenhouses that looked hastily constructed, "like ones that [he had] seen at marijuana grows on repeated occasions." They did not look like they could weather a winter in Oregon. The greenhouses were covered in a translucent plastic.

Bechtel stated that, over the course of the surveillance, he was "constantly looking between the camera and the ground." At the codefendant's hearing, he testified that, before he used the camera, he was able to "see right through" the plastic and observed green plants and the spacing of the plants. Later in the same hearing, he stated more cautiously, "Through the totality of the circumstances, I was able to see what I interpreted as a cannabis grow, and, yes, I believe that I was able to see the plants in the greenhouses before I trained the camera to it." At defendant's hearing, defense counsel questioned Bechtel about his prior testimony about being able to see into the greenhouses and identify cannabis plants. Bechtel responded, "So I believe my testimony was that based on my training and experience, seeing everything from Google images to having taken flights to viewed aerial photographs, based on the totality of all of that: size, space, color, the things around it, I believed that they were cannabis plants." The state also offered the

[1] Under Article I, section 9, "a search occurs when governmental action invades a protected privacy interest." *State v. Zweygartt*, 337 Or App 234, 239, 562 P3d 1106 (2025) (internal quotation marks omitted). We do not understand the state to contend on appeal that defendant lacked a privacy interest in the interior of the greenhouses located in a field on defendant's property. We therefore do not address that issue.

[2] The transcript of the codefendant's suppression hearing was admitted as an exhibit at defendant's suppression hearing.

video footage from the flight into evidence. The video begins zoomed-out over defendant's property and later zooms in on various parts of the property.

The trial court found that "Bechtel testified that from his lawful vantage point he saw, unaided, what he believed to be a large-scale cannabis grow." The court further found that Bechtel "recognized the color of plant material and spacing of plants" and "temporary fencing * * * consistent with cannabis cultivation." The court stated that it had "considered all raised arguments, all admitted exhibits, and testimony," and denied defendant's motion to suppress. As noted, we are bound by the trial court's factual findings "if there is constitutionally sufficient evidence in the record to support those findings." *Ehly*, 317 Or at 75.

We must determine whether the evidence supports the trial court's explicit and implicit findings regarding the officer's alleged unaided identification of cannabis plants, located in greenhouses and under translucent plastic, from an altitude of over two-thirds of a mile. We conclude that it does not.

Although the officer claimed he "believed" he saw marijuana plants, he carefully expressed that his identification was based on the "totality of the circumstances." In other words, he did not claim he plainly saw marijuana but, rather, that he saw circumstantial evidence of marijuana. The trial court's factual findings were limited to Bechtel's belief that he saw marijuana based on that circumstantial evidence. The footage does not support the trial court's implicit finding that, at various angles, Bechtel was able to see into the greenhouses through the plastic sheeting and identify cannabis plants inside with his own eyes from altitudes ranging from 3,500 feet and higher. In the video, the particular plants in the greenhouses are not visible from any angle until the plane-mounted camera zooms in significantly.[3] We conclude that the evidence in the record does not support the trial court's explicit or implicit findings that

---

[3] We note also that, in other Oregon cases where police have asserted the ability to identify marijuana from an aircraft without visual aid, the identification was made at much lower altitudes. *See Ainsworth*, 310 Or at 616 (identification made at an altitude under 500 feet); *Rodal*, 161 Or App at 237 (identification made at roughly 600 feet).

Bechtel saw and identified cannabis plants by the naked eye from over 3,500 feet. We therefore turn next to whether Bechtel's use of the mounted camera constituted a search.

As the Supreme Court has noted, "private space can be invaded by technological as well as physical means." *State v. Smith*, 327 Or 366, 373, 963 P2d 642 (1998). We must consider the particular circumstances of a case to determine whether the use of a technological enhancement by the police is sufficiently intrusive to constitute a search under Article I, section 9. *Rodal*, 161 Or App at 236. The use of certain technological devices from a public space may be invasive if they provide information about a protected space that a police officer, "standing at a lawful vantage point, cannot detect with ordinary human powers of perception." *Smith*, 327 Or at 374. "[I]f objects or conduct in protected premises can be seen or overheard only by technologically enhanced efforts," such efforts might constitute an unlawful search. *State v. Louis*, 296 Or 57, 61, 672 P2d 708 (1983). In such a case, where the contents of a protected space are "not otherwise clearly discernible," even a "modest telescopic enlargement" might constitute a search. *Id.* The controlling question is whether the technology allowed the police to obtain information that was materially different from that which was plainly observable. *State v. Combest*, 271 Or App 38, 56, 350 P3d 222, *rev den*, 358 Or 70 (2015).

In this case, the parties dispute the sophistication and specialized functions of the aerial camera. However, under our case law, the measure of whether the use of technology constitutes a search is not the degree of sophistication of that technology. Rather, we consider whether the technology enabled the police "to obtain information that was materially different" than what was plainly available. *Id.* The state agrees that "using technology to reveal what would otherwise be hidden from view is a search."

As discussed previously, we concluded that the officer could not plainly see marijuana plants at the plane's altitude of 3,500 to 5,000 feet. In fact, in our review of the aerial footage that is part of the record below, it is not possible to see features of the items within the greenhouses when the camera is zoomed out. But, when the camera zooms in on

the greenhouses, individual plants become visible through the plastic sheeting. The evidence demonstrates that the camera allowed the officer to see materially different information than he was able to observe with the naked eye from that same vantage point—namely individual marijuana plants inside greenhouses from an altitude of 3,500 feet and above. For that reason, we conclude that the use of technology to zoom into a greenhouse from that altitude to see individual marijuana plants that could not be seen by the naked eye constituted a search in violation of Article I, section 9. We express no opinion, because it is not at issue in this case, whether an officer could have developed probable cause to believe that the entire operation was a marijuana operation based on what he could observe without technology.

We note that our decision here is narrow and confined to the circumstances of this case. Officers can and have made lawful aerial observations of marijuana on private property. *Ainsworth*, 310 Or at 615; *Rodal*, 161 Or App at 238. And this opinion does not preclude the ability of police to use technology, under certain circumstances, to aid in their aerial observations. We have repeatedly upheld the police use of technology to record what was openly visible to the observing officers. *See, e.g.*, *State v. Wacker*, 317 Or 419, 426-27, 856 P2d 1029 (1993) (use of starlight scope was not a search where the police could plainly see activity in a lighted car in a public parking lot); *Louis*, 296 Or at 61 (use of telephoto lens to photograph the defendant in his house was not a search where the police could see his conduct without the lens); *Rodal*, 161 Or App at 237 (use of camera to photograph marijuana was not a search where the police positively identified it with no visual aids other than his eyeglasses). We have never upheld as constitutionally permissible an officer's technologically enhanced surveillance to see what was otherwise indiscernible. We decline to do so here. In this case, the officer used technology to obtain information from inside defendant's private structures that was undetectable from his vantage point in public airspace. In doing so, the officer constructively invaded defendant's property in violation of her constitutional rights.[4] *Smith*, 327 Or

---

[4] The state makes no alternative argument that the unwarranted search was lawful under any exception to the warrant requirement.

at 374. The trial court erred in denying defendant's motion to suppress.[5]

Because defendant entered a conditional guilty plea and has prevailed on her assignment of error, we remand to the trial court to allow defendant the opportunity to withdraw her plea. *See* ORS 135.335(3) (providing that a defendant who enters a conditional guilty plea and prevails on appeal "may withdraw the plea"). As a result, we do not address defendant's second assignment of error, in which she argues that the trial court abused its discretion when it denied as untimely a different motion to suppress that she had filed shortly before trial, or the state's argument that it is not reviewable because the challenged ruling was not reserved by defendant's conditional plea. This case is now being returned to the trial court so that defendant has an opportunity to withdraw her plea. Even assuming that defendant withdraws her plea and this case continues, the issue of whether defendant's motion was timely filed before trial is not likely to arise in the same posture as presented before us on this record. For those reasons, we do not reach defendant's second assignment of error.

Reversed and remanded.

---

[5] The state notes that Bechtel *later* observed greenhouses from a road and Lorence photographed plants in the greenhouse from a neighboring property with the permission of defendant's neighbor. It is undisputed that both of those events occurred after the flyover and that information from the flyover was used to obtain the warrant. Defendant moved below to suppress all evidence that resulted from the impermissible flyover search, including that resulting from the warrant. We do not understand the state to contend on appeal that the warrant affidavit and warrant were untainted by Bechtel's flyover and aerial video footage. *See State v. DeJong*, 368 Or 640, 651, 497 P3d 710 (2021) (concluding that, once a defendant meets their burden to show that an initial unwarranted search or seizure is unconstitutional and that further evidence obtained is at least "connected" to that prior governmental misconduct, the burden shifts to the state to show that the evidence was untainted by the earlier illegality).