Argued and submitted February 26, reversed in part; affirmed in part and remanded
October 6, 1993

# STATE OF OREGON,
*Appellant,*

*v.*

# GARY LEE SARGENT,
*Respondent.*

(C91-07-33376; CA A72824)

860 P2d 836

Janet A. Klapstein, Assistant Attorney General, Salem, argued the cause for appellant. With her on the briefs were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

David Groom, Deputy Public Defender, Salem, argued the cause for respondent. With him on the brief was Sally L. Avera, Public Defender, Salem.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

ROSSMAN, P. J.

## ROSSMAN, P. J.

■ This appeal involves the legality of the police practice of "securing the premises" pending issuance of a search warrant. The trial court held that the officers lawfully entered defendant's apartment and that they permissibly observed evidence of drug activity while on the premises, but that their actions in "securing the premises" while a warrant was being obtained constituted an impermissible "seizure" of both the apartment and the items recovered during the warrant search. Or Const, Art I, § 9. Accordingly, the court denied defendant's motion to suppress evidence of the items seen by the officers but granted his motion to suppress the items found during the search. The state appeals, assigning error to the trial court's ruling that the officers' conduct in "securing" the premises contravened Article I, section 9.[1] In a cross-assignment of error, defendant contends that the initial entry into his apartment was illegal and, therefore, evidence of the items seen by the officers should have been suppressed along with the fruits of the search. We reverse on the state's assignment, affirm on defendant's cross-assignment and remand.

On June 10, 1991, Portland police began investigating complaints of drug trafficking in the vicinity of Southeast Seventh and Yamhill. An informant told the police that he had witnessed what appeared to be drug sales conducted by persons living on the second floor of an apartment building located on the corner of Yamhill and Southeast Seventh. The informant told police that he had seen persons go to a telephone booth near the apartment building, place a call, make eye contact with the apartment residents, meet one of the residents on the sidewalk or in an alley near the apartment building and exchange small plastic bindles for money. Police contacted the apartment manager, who informed them that the apartment was rented by defendant and his wife. After running a record check on the two, police learned that defendant's wife had a drug conviction and was wanted on two outstanding arrest warrants.[2] They also discovered that

---

[1] Defendant concedes that the impoundment of the apartment while the search warrant was being obtained was permissible under the Fourth Amendment. *See Segura v. United States*, 468 US 796, 104 S Ct 3380, 82 L Ed 2d 599 (1984).

[2] The arrest warrants were for unauthorized departure and absconding from serving a previously imposed jail sentence.

defendant had a conviction for assault with a gun and was on temporary leave from prison for that offense.

Police returned to the area the next day and showed photographs of defendant and his wife to the informant. He identified defendant's wife from the photographs and pointed her out to the officers as she approached the apartment building on foot. Police then set up surveillance of the apartment by placing an officer equipped with binoculars on the ground floor of a store located across the street from the apartment building. The primary investigating officer, Cordell, who was in plain clothes, tried to contact defendant's and his wife's parole officers to obtain their assistance in arresting defendant's wife. The parole officers were not in. Cordell then arranged for two uniformed officers to assist him in the arrest. Upon Cordell's return, the surveilling officer reported that defendant's wife was in the apartment with defendant and at least one other man. Cordell and the two officers went to the apartment and knocked on the door. One of the occupants asked who it was, and Cordell replied, "Police." Cordell knocked again and told the occupants that it was the police. After a third knock and announcement, defendant answered the door. Over defendant's shoulder, Cordell saw an individual dart out of sight. Assuming that it was defendant's wife, Cordell asked defendant to "step aside." He then entered the apartment and attempted to find where the person had gone.

Once inside the apartment, Cordell encountered two other men, Philip Holte and Loren Hunter, sitting in the living room. Cordell informed the other two officers, who had remained outside the apartment, that defendant's wife was unaccounted for. At Cordell's direction, the officers entered the apartment, escorted defendant into the living room and checked the other room in the apartment for defendant's wife. Cordell stayed in the living room with the three men so that he "could watch all three individuals for officer safety and safety of all persons." While standing in the living room, he saw a paging device on the coffee table and orange caps of hypodermic needles on the kitchen floor.

The two officers found defendant's wife hiding in the closet in the other room and they brought her out into the living room. Cordell noticed open abscesses on the inner arms

of both defendant and his wife. He then directed the officers to check the closet for weapons or evidence that defendant's wife may have concealed there. They returned to the closet and found $3,295 in cash. As they prepared to take defendant's wife to the detention center, Cordell explained that he and the other officers were present to serve an arrest warrant on defendant's wife and because they had received reports that drug sales had been carried out by the residents of the apartment. Defendant volunteered that he was taking methadone as part of a prescribed treatment for his heroin addiction, but denied being involved in drug trafficking. While speaking with defendant, Cordell saw a piece of paper on which were written mathematical fractions in units of eighths, quarters, halves and wholes. Defendant had no explanation for the figures on the paper.

Holte then asked if any of the officers wished to search him. The officers searched him, found nothing, and allowed him to leave after checking for outstanding warrants. Cordell then asked Hunter if the officers could search him. Hunter "just plain said 'No.' " Finding no outstanding warrants, the officers permitted Hunter to leave. Cordell next asked defendant for consent to search him. He consented and stood up to be searched. The officers found $2,618 in cash. Defendant told the officers that his parole officer could confirm that he had had the money since his recent release from prison. Cordell then asked defendant and his wife for consent to search the apartment. They declined, and the officers did not conduct any further search at that time. Cordell issued a property receipt and forfeiture notice to defendant for the cash found on his person and defendant left the apartment. The officers then took defendant's wife to the detention center for booking.

Cordell left to get a search warrant for the apartment. Two other officers who had been called to the scene remained in the apartment living room to "secure the premises" while the warrant was being obtained. Approximately five to six hours later, Cordell radioed the officers that a warrant had been secured and that the search could begin. During the search, defendant returned to the apartment and let himself in with a set of keys. The officers told him that he

could not enter the apartment while the search was in progress. The officers found ten plastic wrapped pieces of tar heroin and the $3,295 that previously had been found by the officers who arrested defendant's wife.[3] They also recovered two syringes, a knife with heroin residue, the pager, the needle caps, the paper containing mathematical fractions and six balloons. Defendant was arrested for delivery of a controlled substance, possession of a controlled substance and conspiracy to commit delivery of a controlled substance. ORS 475.992; ORS 161.450.

We first address defendant's contention that the officers unlawfully entered the apartment. To have lawfully entered, defendant claims either that Cordell must have been armed with a search warrant or that there must have been probable cause plus exigent circumstances. Because neither of those circumstances existed, defendant argues, the entry was illegal.

Defendant is mistaken that a search warrant or probable cause plus exigent circumstances are the only possible legal justifications for the officers' entry into the apartment. It is well settled, under both state and federal law, that law enforcement officers may enter a private residence to execute a valid arrest warrant for a resident if the officers have probable cause to believe that the resident is on the premises. *State v. Jordan*, 288 Or 391, 399-400, 605 P2d 646, *cert den* 449 US 846 (1980); *Steagald v. United States*, 451 US 204, 101 S Ct 1642, 68 L Ed 2d 38 (1981).[4] There is no constitutional requirement that, in addition to a valid arrest warrant, officers have a search warrant or that exigent circumstances exist, before they may enter. *See State v. Davis, supra* n 4, 313 Or at 255; *State v. Jordan, supra.* Defendant concedes that his wife was a resident of the apartment and that her arrest was made pursuant to a valid arrest warrant

---

[3] The trial court suppressed the $3,295 on the basis that its discovery could not be sustained as incident to arrest. The state does not challenge that ruling.

[4] We recognize that entry into a residence pursuant to a valid arrest warrant for a resident does not authorize law enforcement officers to conduct a general search of the premises. *State v. Davis*, 313 Or 246, 255, 834 P2d 1008 (1992); *State v. Jordan, supra*, 288 Or at 401-02. Cordell's unaided observations from the living room while the accompanying officers searched for defendant's wife and prepared her for transport to the detention center did not constitute a "search" in the constitutional sense. *State v. Ainsworth*, 310 Or 613, 621, 801 P2d 749 (1990).

and with probable cause to believe that she was on the premises. That the officers may also have been interested in narcotics trafficking does not affect the legality of their entry and presence in the apartment to effectuate the arrest. By virtue of the arrest warrant alone, the officers were authorized to enter the apartment to arrest defendant's wife without violating either the state or federal constitutional prohibitions against unreasonable searches and seizures. *State v. Jordan, supra*; *Steagald v. United States, supra*.[5]

■        We turn to the state's claim on appeal that the officers' conduct in "securing the premises" did not run afoul of Article I, section 9. In asserting their respective positions, both parties rely on *State v. Hansen*, 295 Or 78, 664 P2d 1095 (1983). In *Hansen*, one officer ordered other officers to "secure" a residence suspected to contain marijuana while he attempted to obtain a search warrant. The officers "secured" the residence by *unlawfully* entering it and then arresting everyone there and seizing all evidence in plain view. The marijuana was discovered during a search conducted two and one-half hours later pursuant to the warrant that was ultimately obtained.

In *Hansen*, the state conceded that the officers' illegal entry into and continued occupation of the defendant's residence constituted an impermissible "seizure" of the residence in the constitutional sense. It argued, however, that under *Wong Sun v. United States*, 371 US 471, 83 S Ct 407, 9 L Ed 2d 441 (1963), the seizure of the marijuana did not occur until it was found during the search pursuant to the warrant and that that seizure "was not an exploitation of the illegal seizure of the house * * * because the warrant was obtained on evidence of probable cause derived dehors the seizure of the house * * *." 295 Or at 84-85. The court rejected that position, because it

> "ignore[d] the defendant's point that this case is concerned with the very evidence the police sought to obtain by 'securing' the premises, whereas, in *Wong Sun*, the United States Supreme Court was concerned with admissibility of 'derivative' evidence * * *." 295 Or at 85.

---

[5] The trial court ruled that Cordell had reasonable suspicion to detain and question defendant about potential involvement in drug activity. ORS 131.615. Defendant does not challenge that ruling.

The court then proceeded to determine whether the illegal seizure of the residence was also an illegal seizure of all of its contents. It declined to hold that the seizure was of all the contents, because such a broad holding "is not necessary to protect the people against unreasonable seizures or searches * * *." 295 Or at 96. It first concluded that items of contraband that were actually discovered or clearly visible during the unlawful seizure were impermissibly seized and, therefore, suppressible. The court then held that the marijuana, which was present in the residence but not discovered or seen during the illegal seizure, had also been unlawfully seized. It reasoned that the purpose of the unlawful seizure of the residence was to further the arrest and conviction of the defendant for possession of the marijuana by reducing the marijuana to the officers' control. The exercise of such control constituted "a seizure under both the state and federal constitutions and [was] thereby proscribed as being unreasonable for want of a warrant." 295 Or at 97.

Based on *Hansen*, we conclude that the officers "seized" defendant's apartment when they "secured" the premises; that the items of contraband that were clearly visible during the seizure, *i.e.*, the pager, the needle caps, and the paper with mathematical fractions, were seized; and that, because the seizure of the apartment was for the very purpose of obtaining a conviction of defendant, and possibly others, for possession of controlled substances believed to be present, the items of contraband that were not in plain view or actually discovered during the seizure of the apartment, *i.e.*, the heroin, the knife with heroin residue, the syringes and the balloons, were also seized.

■ It does not necessarily follow, however, that the "seizure" of defendant's apartment and its various contents that resulted from the "securing" of the premises was proscribed by Article I, section 9. As the court observed in *Hansen*, the phrase "securing the premises" does not have a universally recognized definition and "does not necessarily mean the same thing in every case." 295 Or at 81. There, the officers "secured" the defendant's residence by *illegally* entering it and continuing to remain there until the warrant arrived. However, the "securing of the premises" in this case did not involve an illegal entry. The officers' entry into

defendant's apartment to arrest his wife was not prohibited by either the state or federal constitution. Here, the "securing of the premises" consisted only of a continued occupation following a lawful entry. As a threshold matter, then, we must decide whether what the officers actually did in "securing the premises" constituted an *illegal* "seizure" of defendant's apartment. If it did, then, under *Hansen*, the items seized as a result of that unlawful seizure were impermissibly seized and should be suppressed. If, however, the seizure of the apartment was lawful, then, by negative implication, under *Hansen*, the seizure of the other items in the apartment was also lawful.

We start from the premise that "when police 'secure the premises,' they have seized them, and the seizure must be justified accordingly." *State v. Dowdy*, 117 Or App 414, 418, 844 P2d 263 (1992). A warrantless seizure of property is invalid unless it falls within one of the few specifically established and well-delineated exceptions to the warrant requirement of Article I, section 9. *State v. Petersen*, 114 Or App 126, 128-29, 834 P2d 488, *rev dismissed* 315 Or 272 (1992). One such exception is the doctrine of probable cause and exigent circumstances, which is, in a nutshell, "a recognition that practical necessity may require evidence to be seized before a warrant can be obtained." *State v. Nicholson*, 89 Or App 306, 310, 748 P2d 1028 (1988). It is the state's burden to prove the applicability of the probable cause/exigent circumstances exception.

There can be little question that the officers had probable cause to believe that there was a criminal drug operation being carried on in defendant's apartment and that evidence of that operation would be found upon a thorough search of the premises. The day before the arrest, an informant had told the officers that he had witnessed what appeared to be drug sales made by the residents of the apartment and had described the manner in which the alleged sales had been made. Upon legally entering the apartment to effect the arrest of defendant's wife, the officers saw the pager, the hypodermic needle caps, the needle tracks in defendant's and his wife's arms and the paper with mathematical fractions. They also lawfully discovered several thousand dollars on defendant's person. On essentially that

information, a magistrate issued a search warrant for the apartment, the validity of which has not been challenged. We agree with the issuing magistrate that that information, taken as a whole, established probable cause to believe that evidence of a drug operation would be found in the premises.

However, the existence of probable cause alone will not justify a warrantless seizure. There must also be an individualized showing of exigent circumstances. *State v. Kock*, 302 Or 29, 33, 725 P2d 1285 (1986). The state suggests that the exigency justifying the seizure was the practical need to prevent the loss of evidence. Both we and the Supreme Court have recognized that an exigent circumstance exists when a situation presents a threat of destruction or loss of evidence. *State v. Stevens*, 311 Or 119, 126, 806 P2d 92 (1991); *State v. Parras*, 110 Or App 200, 203, 822 P2d 151 (1991). The threat, however, must be more than a generalized concern that some unknown person might interfere with the evidence. As we noted in *State v. Nicholson, supra*:

> "Oregon courts have held that the possibility that such interference would occur before a warrant could be obtained constituted exigent circumstances only when the state has proven that identifiable persons with a motive to interfere existed." 89 Or App at 311.

Cordell and the other officers had more than a mere speculative concern that the evidence might be lost if the apartment was left unprotected. Although defendant's wife was taken into custody, defendant remained free to come and go as he pleased. Whether on his own or on his wife's behalf, defendant had a real and identifiable motive to destroy or otherwise dispose of the evidence in the apartment.

We conclude that the circumstances here created an exigency that justified the officers' warrantless "seizure" of defendant's apartment and the concomitant "seizure" of the various items in the apartment. Accordingly, we hold that the trial court properly denied defendant's motion to suppress the pager, needle caps and paper,[6] but erred in granting his motion to suppress the other items.

---

[6] The trial court held that the pager, syringe caps and paper were properly seizable, because Cordell had observed them in plain view. In the light of our disposition of this matter, it is not necessary to address defendant's contention on cross-appeal that that ruling was in error.

■   In sustaining the seizure of defendant's apartment and its various contents, we find it significant that the officers did not in any way exploit their presence in the apartment during the period the warrant was being obtained. They did not conduct any further search of the apartment nor did they tamper with or examine the objects in plain view. They simply awaited arrival of the warrant. Indeed, defendant concedes that "nothing occurred of significance" in the interim between defendant's wife's arrest and the execution of the warrant.[7]

We also find it noteworthy that the officers permitted Holte and Hunter to leave the apartment once they either consented or refused to consent to a search of their persons and the officers verified that neither had outstanding warrants. Defendant was also allowed to leave after a brief detention. The officers thus did not force any of the apartment occupants to stay and be subjected to unwanted, close-range police scrutiny. *See* 2 Lafave, *Search and Seizure: A Treatise on the Fourth Amendment*, § 6.5(c)(2nd ed 1987).

■   Additionally, we reject defendant's contention that the positioning of the officers inside, rather than outside, the apartment pending arrival of the warrant renders the seizure of the apartment illegal. A "seizure" within the meaning of Article I, section 9, occurs when "there is a significant interference with a person's possessory or ownership interests in property." *State v. Peterson, supra*, 114 Or App at 129. We do not believe that "securing" the premises from within constituted any more of an interference with defendant's possessory or ownership interests in the apartment than if the officers had remained outside the door and prevented free ingress and egress. *See State v. Pearson*, 69 Or App 211, 216, 686 P2d 411 (1984).[8]

---

[7] Defendant makes no claim that the five- to six-hour delay in obtaining the warrant had any legal effect on the seizure of the apartment or certain of its contents. Although we recognize that a seizure which results from a "securing" of premises may be questionable due to its duration, here there is no evidence which shows that the period of time was inordinate or unduly excessive.

[8] In *Pearson*, we noted that, under *State v. Hansen, supra*, it is likely that a residence is "seized" for purposes of Article I, section 9, even when the officers keep the premises under siege from outside the property line.

In short, under these circumstances, we are not prepared to condemn the officers' limited occupation of defendant's apartment for the purposes stated here as an unreasonable seizure of the apartment or any of its contents.[9]

Reversed on the state's assignment of error; affirmed on defendant's cross-assignment of error; and remanded for proceedings not inconsistent with this opinion.

---

[9] Defendant's contention that his consent to search his person was involuntary and that, as a result, the $2,618 should have been suppressed, is without merit.