Argued and submitted September 1, 1994, decision of the Court of Appeals affirmed on other grounds; circuit court's order on motion to suppress affirmed in part and reversed in part; case remanded to the circuit court for further proceedings June 27, 1996

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## GARY LEE SARGENT,
*Petitioner on Review.*

## (CC C91-07-33376; CA A72824; SC S41128)

918 P2d 819

David E. Groom, Deputy Public Defender, Salem, argued the cause for petitioner on review. With him on the petition was Sally L. Avera, Public Defender.

Janet A. Klapstein, Assistant Attorney General, Salem, argued the cause for respondent on review. With her on the response were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Unis,** Graber, and Durham, Justices.

** Unis, J., did not participate in this opinion.

FADELEY, J.

**FADELEY, J.**

Police officers executed a warrant to search an apartment in Portland for evidence related to heroin trafficking. The warrant was based on observations that had been made earlier during the service of an arrest warrant at the same premises. The police officers obtained various items of evidence of heroin trafficking and use. Based on that evidence, defendant, his wife, and others were charged with possession, delivery, and conspiracy to deliver heroin.

Defendant moved to suppress a variety of evidence. The trial court denied suppression of items that the police saw in plain view in the apartment when they entered it initially to execute the arrest warrant. The trial court also denied suppression of money taken from defendant's possession during a consent search of his person. However, all items first discovered in the later search pursuant to the search warrant were suppressed. Also suppressed was a large sum of money found, at the time of the earlier arrest, in a closet in which the person to be arrested had hidden in an attempt to avoid apprehension.

The state appealed, and defendant filed a cross-assignment of error. The Court of Appeals affirmed that portion of the trial court's order that denied suppression of evidence. However, the Court of Appeals reversed that portion of the trial court's order that suppressed the drug evidence discovered and seized later through execution of the search warrant. *State v. Sargent*, 123 Or App 481, 860 P2d 836 (1993). We allowed defendant's petition for review and now affirm the decision of the Court of Appeals on different grounds.

Persons living in the neighborhood of an apartment house in Portland complained to the police about what they thought was drug dealing in their neighborhood. They informed the police of the location, the method employed, and the persons involved.

A named citizen informant identified a photograph of defendant's wife as a woman from the apartment and specifically identified her as being involved in a particular suspected drug transaction. The manager of the apartment

house identified defendant and his wife by name as the rent-ers of the second-story front apartment that was the subject of the citizen's complaints.

Defendant's wife was the subject of an outstanding arrest warrant for Unauthorized Departure from an Intensive Supervision Program, to which she was required to submit based on an underlying conviction for possession of a controlled substance. She also had a drug-related conviction. Defendant, who was observed coming and going from the apartment, recently had been released from prison on parole and was known by the officer in charge to have used heroin in the past.

Rather than acting immediately on the outstanding arrest warrant, the officer in charge of investigating the citizen's complaints ordered surveillance of the apartment. Surveillance confirmed the information supplied by the local residents. The next day, the officer conducting the surveillance advised the officer in charge that defendant's wife was in the apartment, as were defendant and at least one other male.

Accompanied by two uniformed police officers, the officer in charge knocked on the apartment door and responded to a question from inside the apartment that they were police officers. After the officer in charge knocked twice more and again responded "police officers" to the same question from inside the apartment, the door was opened. The officers entered the apartment under the authority of the arrest warrant. The officer in charge saw defendant's wife hurriedly going down the hall away from the front door. Entering, that officer saw defendant and two additional males in the kitchen and living area. The officer in charge requested that the other police officers enter the apartment and find defendant's wife.

A pager on a table emitted noise. One of the males turned it off. The officer in charge saw needle caps, needles, and syringes in the vicinity of a microwave oven in the kitchen. He saw a paper with Arabic numbers on it, arranged in fractions and whole numbers, near the pager. He knew from his experience that numbers arranged in fractions were used for keeping records of drug transactions.

The officer in charge obtained the identities of the three males. One, Holte, asked if he would be permitted to leave if he consented to a search of his person. The officer agreed, and Holte was searched and permitted to leave after the search revealed nothing unusual. Another, Hunter, refused consent to search his person and, on his request, was permitted to leave. Neither took the pager. Thereafter, defendant consented to a search of his person when asked by the officer in charge; $268 was found in his pants pocket, and an additional $2,350 was located in his wallet. The officer in charge observed "needle tracks" and open abscesses on defendant's arms. Defendant told that police officer that he was in a methadone treatment program and that his parole officer could confirm that he had the large sum of cash when he left prison on parole. The officer took the $2,618 from defendant's person and issued a receipt and forfeiture notice.

The uniformed officers found defendant's wife hiding in a bedroom closet and brought her to the living area to the police officer in charge. Injection abscesses were visible on her arms. The officer in charge directed the other officers to return to the closet and look for evidence in the area "within arms length of where she was found." They observed three "large" rolls of bills, wrapped in rubber bands, that were visible on a shelf just above eye level in that closet, quite near where defendant's wife had been hiding. They took the rolls to the officer in charge. He counted $3,295 and directed that the rolls be returned to the shelf in the closet where they were found.

After defendant's wife was transported from the area under arrest, defendant also left the apartment. When he left, police officers were still present, but defendant said nothing to them relative to their continuing occupation of the apartment. He did not ask that they leave. Thereafter, the officer in charge posted other police officers inside the apartment to "secure" it while a search warrant was being obtained. That warrant was obtained, and a search under it had begun when, seven or eight hours later, defendant returned and attempted to re-enter the apartment.

The search warrant was obtained on the affidavit of the officer in charge. All information in his affidavit, including the presence in the apartment of the money in the closet

and of the pager, sales-record paper, and needles, was known to the officer in charge when he left the apartment after defendant's wife was arrested. About six hours later, he radioed the police officers inside the apartment that he had obtained a search warrant and that they should start searching the apartment. They did so.

When defendant returned to the apartment after the search under the search warrant had started, he opened the front door with his keys. The officer in charge seized the keys as evidence.

In addition to the evidence discovered and viewed during the arrest, the search pursuant to the search warrant produced 10 individually wrapped one-quarter gram pieces of tar heroin, found in a box on the floor of the bedroom closet, and a knife with heroin residue and six balloons, found in a woman's overnight bag located elsewhere in the bedroom. The bag also contained a card identifying defendant's wife, as well as various bills, photos, and papers that, by inference, connected defendant and his wife to the apartment.

Based on the foregoing facts, the trial court concluded that the continuing occupation of the apartment by police officers was unlawful from the point after police had executed the arrest warrant, because no exigency was articulated requiring police presence inside the apartment to preserve evidence. Accordingly, the trial court excluded all evidence obtained pursuant to the search warrant.[1]

By written order, the trial court:

1. Suppressed the $3,295 observed in the closet where defendant's wife was apprehended;

---

[1] The trial court separately determined that the money in the closet, discovered during the time of the arrest by warrant, was seized unlawfully. The state did not seek review of that ruling in the Court of Appeals, and we do not consider its merits.

In addition, the record of circuit court proceedings on defendant's motion to suppress discloses that the trial judge orally granted suppression of evidence concerning telephone calls to the apartment that the police intercepted during the period of post-arrest occupation of the apartment. However, the written order granting some portions of the motion to suppress and denying other portions makes no mention of the oral ruling suppressing evidence of incoming calls. The state raised no issue concerning this matter in its appeal, either.

2. Suppressed all evidence "seized after the arrest warrant was executed and the detention of persons present in the apartment ended," *i.e.*, everything seized pursuant to the search warrant; and

3. Denied suppression of the money, taken from defendant's person, and of the pager, needles, and piece of paper with sales figures on it, taken from the apartment.

The burden to establish the lawfulness of a warrant-less search and seizure is on the state. ORS 133.693(4). That burden shifts to the defendant to prove unlawfulness when the state's agents act under authority of a warrant. *Id.* at (2) and (3).

Facts found by a trial court are binding on the appellate courts if they are supported by evidence in the record. *State v. Miller*, 300 Or 203, 227, 709 P2d 225 (1985), *cert den* 475 US 1141 (1986). Conclusions of law and other questions of law, however, are open to full review by appellate courts. *State v. Warner*, 284 Or 147, 156-58, 585 P2d 681 (1978).

The trial court relied on *State v. Hansen*, 295 Or 78, 664 P2d 1095 (1983). In *Hansen*, police officers unlawfully entered and occupied residential premises, detaining the occupants for several hours while attempting to obtain a search warrant. In the present case, unlike in *Hansen*, the police officers entered the residence lawfully to execute an arrest warrant for defendant's wife, who was present in the apartment. She was arrested there and removed. All the other occupants, including defendant, left the premises. No one was arrested or detained unlawfully, as was the case in *Hansen*.[2]

---

[2] The decision in *Hansen* concluded with this discussion:

"The 'securing' of the premises [after an illegal initial entry] as effectively reduced the marijuana to the control of the trespassing police as if they had actually discovered and taken physical possession of it. We hold this to be a seizure under both the state and federal constitutions and thereby proscribed as being unreasonable for want of a warrant.

"It has been suggested that we hold that any object that the police would have prevented from being removed from the residence was seized. We need not decide in this case whether the rule should sweep so broadly. We would leave to another day what to hold where police might, with probable cause, enter a residence unlawfully to reduce to control narcotics, and unknown to those officers and not discovered by them might be entirely different

■ In the present case, unlike in *Hansen*, the initial entry was lawful, because it was authorized by the arrest warrant and knowledge that the person named in the warrant was inside. *State v. Davis*, 313 Or 246, 255-56, 834 P2d 1008 (1992) (stating principle). In such circumstances, no separate search warrant was required. *State v. Jordan*, 288 Or 391, 399-400, 605 P2d 646, *cert den* 449 US 846 (1980).

The Court of Appeals held that the exigency-plus-probable-cause exception to the warrant requirement was made out. 123 Or App at 490. The trial court had decided that the police officers who testified for the state "did not articulate exigent circumstances requiring them to seize the evidence." Because we decide the case on a different basis, we do not consider that issue further.

■ Seizure of the residence and its contents continued beyond a reasonable time after the arrest warrant and related matters were completed. Thus, the arrest warrant and entry to execute it no longer authorized the continuing occupation. There is no need in this case to pinpoint an exact time after completion of the arrest by which the continued occupation arguably became unreasonable, and thus arguably unlawful, because the police occupation of the apartment lasted for many hours in this case.

■ However, this potentially trespassory conduct[3] did not result in, produce, or lead to discovery of any item of evidence mentioned in the trial court's written suppression order. As a matter of logic, then, there is no item of evidence from the search warrant tainted by the potentially trespassory conduct and, therefore, no item to suppress. The Oregon rationale for the exclusionary rule does not require suppression here.[4] Any invasion of privacy that occurred after the

---

contraband, such as counterfeit money, later discovered in a perfectly good warrant search for counterfeit money." *Hansen*, 295 Or at 97.

[3] Assuming that no exception to the warrant requirement existed, continued occupation of the house after their authority ended may have exposed the police to potential tort liability in trespass that might not have arisen from guarding the apartment from the outside.

[4] Oregon does not follow the rationale that suppression is granted to deter unlawful police conduct. *State v. Ainsworth*, 310 Or 613, 617, 801 P2d 749 (1990); *State v. Kosta*, 304 Or 549, 553, 748 P2d 72 (1987). As was said in *State v. Davis*, 295 Or 227, 243, 666 P2d 802 (1983), "[t]he very purpose of our constitutional

arrest warrant was executed is not connected to discovery or availability of any evidence seized during the later search pursuant to the search warrant. Thus, no privacy right that can be vindicated by suppression can be traced to any item seized under the search warrant. There is nothing seized under it to suppress. Put in terms of this court's characterization in *State v. Davis*, 295 Or 227, 234, 666 P2d 802 (1983), there are no "fruits of [governmental] transgression" to suppress.

■■ Defendant argues that the trial court erred when it denied suppression of the items seen by the police after their entry to execute the arrest warrant, but before that task had been completed. We agree with the Court of Appeals that the trial court did not err when it denied suppression of the evidentiary items that were in "plain view"[5] during the arrest warrant phase of the police presence in the residence. The police were at a place where they were entitled to be. The evidence of drug crime was in plain view from that place. The police actually seized the crime evidence at that time, even though they left it at the location where they saw it. One rationale for permitting seizure of evidence in plain view is that no unlawful search, and thus no illegality, was required to discover it. In this respect, the trial court did not err.

The decision of the Court of Appeals is affirmed on other grounds. The circuit court's order on the motion to suppress is affirmed in part and reversed in part. The case is remanded to the circuit court for further proceedings.

---

provision was to protect a person's home from governmental intrusions." Thus, Article I, section 9, does not require suppression when the only effect of suppression would be to deter future police conduct. It is only when suppression also would vindicate a privacy interest that the remedy of suppression is appropriate. Defendant did not urge before the trial court that the federal Fourth Amendment requires suppression.

[5] Under the "plain view" doctrine described in *Ainsworth*, 310 Or at 621 n 9, the intrusion must be valid and it must be immediately apparent that the items are crime evidence.