LANDAU, J.,
concurring.
As the majority correctly observes, this court’s cases hold that the sole rationale for the exclusion of evidence obtained as a result of police misconduct is the vindication of the defendant’s constitutional rights. The purpose of excluding evidence unlawfully obtained, the court has explained, is “to restore a defendant to the same position as *95 if the government’s officers had stayed within the law.” State v. Hall, 339 Or 7, 24, 115 P3d 908 (2005). In adopting that rationale, the court has categorically rejected deterrence as an explanation for this state’s exclusionary rule. In so doing, the court has painted itself into something of a doctrinal corner.
The problem is that the personal rights rationale for Oregon’s exclusionary rule is incomplete. It fails to supply an explanation for the exclusion of evidence that, although obtained as a product of prior police misconduct, was obtained with the defendant’s consent. If a defendant has, in fact, voluntarily consented to the search, why should the courts not vindicate that decision? See Hall, 339 Or at 40-41 (Durham, J., concurring in part and dissenting in part) (consent to search that is “the product of an authentic voluntary choice and not mere resignation to the authority of the police or to the exigencies of the stop or arrest” is sufficient to justify warrantless search).
To answer that question, this court has invoked the idea of “tainted consent.” The police misconduct may be of a particular character that it deprives subsequent consent of its force. But the court has had a devil of a time explaining why that is so and precisely how we can identify such a taint. Moreover, the factors that it has identified for determining the existence of such a taint usually have nothing to do with whether the prior police misconduct actually affected a defendant’s decision to consent. The idea of a tainted consent, then, is something of a fiction.
In my view, there is a straightforward explanation for why, notwithstanding a defendant’s consent, certain unlawfully obtained evidence should be excluded: deterrence of future police misconduct. There are some forms of police misconduct that the courts simply should not countenance. Sometimes, regardless of whether a defendant consented, the court should exclude evidence otherwise unlawfully obtained to prevent police from reaping the benefits of their misconduct.
That is not to say that this court has erred in invoking the vindication of personal rights as the rationale for this state’s exclusionary rule. It is to say that the court has *96 erred in adhering to the notion that it is the sole rationale for that rule. Of course, correcting that error would require reevaluating a number of this court’s prior cases.
For years, this court explained its exclusionary rule in terms of deterrence, following existing federal court interpretation of the Fourth Amendment. In State v. Nettles, 287 Or 131, 136, 597 P2d 1243 (1979), for example, the court explicitly endorsed the federal court view that the exclusionary rule is “a judicially created remedy designed to deter future unlawful police conduct and that the rule [is] not for the purpose of compensating for the unlawful invasion of a person’s privacy.” See also State v. Holt, 291 Or 343, 351, 630 P2d 854 (1981) (“The purpose of exclusion is to deter unlawful police conduct by excluding evidence unlawfully obtained from the person against whom it is to be used.”); State v. Quinn, 290 Or 383, 397, 623 P2d 630 (1981) (referring to the “protective and prophylactic purposes” of the deterrence-based exclusionary rule).
In 1981, however, the court began to shift its focus away from deterrence as a rationale for the exclusionary rule. Writing for the court in State v. McMurphy, 291 Or 782, 785, 635 P2d 372 (1981), Justice Linde commented that “the deterrent effect on future practices against others, though a desired consequence, is not the constitutional basis for respecting the rights of a defendant against whom the state proposes to use evidence already seized. In demanding a trial without such evidence, the defendant invokes rights personal to himself.” Justice Linde’s comment was obiter dictum, but it was to lay the groundwork for a rethinking of the rationale for the state’s exclusionary rule in subsequent cases.
Two years later, in State v. Davis, 295 Or 227, 237, 666 P2d 802 (1983), the court went so far as to suggest that, historically, the purpose of Oregon’s exclusionary rule was to vindicate the personal rights of the defendant “by denying the state the use of evidence secured in violation of those rules against the persons whose rights were violated, or, in effect, by restoring the parties to their position as if the state’s officers had remained within the limits of their authority.” The court nevertheless acknowledged some *97 “diversity of expression” as to the rationale for the exclusionary rule, which included in a number of cases the deterrence of future police misconduct. Id.
In State v. Tanner, 304 Or 312, 745 P2d 757 (1987), however, a deeply divided court (there were five separate opinions) stated categorically that Oregon’s exclusionary rule was not predicated on deterrence of police misconduct. Citing Davis and McMurphy, the court declared that, “[u]nlike the Fourth Amendment exclusionary rule, which has been predicated in recent years on deterrence of police misconduct *** the exclusionary rule of [Article I,] section 9[,] is predicated on the personal right of a criminal defendant to be free from an ‘unreasonable search, or seizure.’” Id. at 315.
Justice Jones, joined by Justice Peterson, dissented, complaining that “[t]he whole theory that Oregon’s exclusionary rule is somehow predicated on a personal right of a defendant simply falls for lack of any foundation.” Id. at 341. Justice Jones challenged the majority’s reliance on McMurphy, which he said was “predicated on pure dictum,” id. at 330, as well as Davis, which he asserted was based on a misreading of prior case law, id. at 331-33.
Justice Gillette concurred, but he expressly disassociated himself “from the ‘personal right’ vs. ‘deterrent’ struggle into which this case has developed.” Id. at 324-25. He commented that, although Justice Jones made “some good points” in questioning the majority’s description of the court’s own prior cases, in his view, the result in that case would be the same under either rationale, so it was unnecessary for him to weigh in on the debate between the dissent and the majority. Id.
In State ex rel Juv. Dept. v. Rogers, 314 Or 114, 117-18, 836 P2d 127 (1992), this court expressly disavowed Nettles, explaining that its prior decision had relied too much on federal Fourth Amendment analysis in recognizing deterrence as a rationale for the state’s exclusionary rule. Since then, the court fairly consistently has reiterated the position that the sole purpose of, and rationale for, the state’s exclusionary rule is the vindication of the personal *98 right to be free from unreasonable searches and seizures. See, e.g., State v. Smith, 327 Or 366, 379, 963 P2d 642 (1998) (“This court * * * clearly has rejected that deterrence rationale as foreign to the Oregon search and seizure provision, holding, instead, that the Oregon exclusionary rule exists to vindicate a personal right to be free from unlawful searches and seizures.”); State v. Sargent, 323 Or 455, 462 n 4, 918 P2d 819 (1996) (“Oregon does not follow the rationale that suppression is granted to deter unlawful police conduct”).
It is perhaps worth noting that this court, in staking out the position that deterrence has no role in determining whether evidence must be excluded, stands almost alone. Nearly all the state courts that have adopted an exclusionary rule under their state constitutions recognize that deterrence is, at the very least, a relevant consideration in determining whether to exclude evidence.[1] The Supreme Court of Alaska, for example, has explained that its state constitutional exclusionary rule “has twin rationales. One of these rationales is deterrence of unconstitutional methods of law enforcement. The other rationale is the imperative of judicial integrity.” State v. Sears, 553 P2d 907, 911-12 (Alaska 1976). The Hawaii Supreme Court, for another example, recognizes that its state exclusionary rule serves three purposes: “(1) judicial integrity, (2) the protection of individual privacy, and (3) deterrence of illegal police misconduct.” State v. McKnight, 131 Hawai’i 379, 398, 319 P3d 298 (2013). The Idaho Supreme Court likewise has developed its state constitutional exclusionary rule “as a constitutionally mandated remedy for illegal searches and seizures * * * [and] a deterrent for police misconduct.” State v. Koivu, 152 Idaho 511, 519, 272 P3d 483 (2012).[2]
*99 In that light, it strikes me as odd that this court, in recognizing the importance of vindicating personal rights as a justification for this state’s exclusionary rule, has concluded that it is necessary to abandon the justification of deterrence. In fact, although the court expended a great deal of effort attempting to justify the personal rights justification in Davis, it has never expended much of any effort at explaining why deterrence did not continue to be a valid justification for exclusion as well. The court appears to have predicated its decision on the assumption that it was *100 required to choose one justification or the other. The case law that I have just noted casts some doubt on the validity of that assumption, however. In my view, there seems to be no good reason why deterrence cannot also inform our evaluation of whether evidence must be excluded.
In the course of the last 30 years of case law, this court has offered some hints as to the source of its discomfort with deterrence. I find none of them particularly persuasive, though. First, in McMurphy, Justice Linde suggested in dictum that, although deterrence may be “a desired consequence,” nevertheless it “is not the constitutional basis for respecting the rights of a defendant against whom the state proposes to use evidence already seized.” McMurphy, 291 Or at 785. Justice Linde, however, never explained precisely why deterrence lacks a constitutional basis. And, indeed, although this court frequently has repeated the conclusion, to my knowledge, the court has never explained it. The court appears to assume that deterrence is merely a judicially created prophylactic that cannot be rooted in the constitution itself. Even assuming that to be the case, however, I find it useful to note that the court has felt no such hesitation in requiring Miranda-type warnings under Article I, section 12, of the Oregon Constitution, even though nothing in the constitution itself requires it. State v. Moore/Coen, 349 Or 371, 382, 245 P3d 101 (2010) (“Under, Article I, section 12, the police must give a defendant who is in custody Miranda-like warnings prior to questioning.”). Indeed, the court has candidly explained that requiring such warnings is not, strictly speaking, required by the text of the constitution; rather, the requirement is a judicially created prophylactic that “may be adapted or replaced from time to time by decisions of this court or by legislation in the light of experience or changing circumstances.” State v. Mains, 295 Or 640, 645, 669 P2d 1112 (1983).
Second, it has been suggested that adopting a deterrence rationale would open the door for defendants to challenge the admissibility of evidence that was admitted in violation of someone else’s constitutional rights. That concern, in fact, appears to be the principal underpinning of the court’s rejection of deterrence in Tanner. 304 Or at 315-16 (“the search or seizure must violate the defendant’s [Article I,] *101 section 9 [,] rights before evidence obtained thereby will be suppressed; a defendant’s section 9 rights are not violated merely by admitting evidence obtained in violation of section 9”). Justice Linde likewise voiced the same concern in McMurphy, in which he noted that “it should make no difference whose rights were invaded” if deterrence is the justification for exclusion. 291 Or at 785. But it strikes me that that is valid only if it assumed that deterrence is the sole justification for the state’s exclusionary rule.
Third, it also has been suggested that adopting a deterrence rationale for the state’s exclusionary rule leads to the recognition of a malleable “good faith exception” that would apply when police officers may violate a defendant’s Article I, section 9, rights, but do so in good faith. See, e.g., Tanner, 304 Or at 325 (Gillette, J., concurring) (“The vacillation and retraction in recent years in the United States Supreme Court’s Fourth Amendment jurisprudence, leading to its inexplicable ‘good faith’ exception to the exclusionary rule * * * satisfies me that the ‘deterrence’ rationale does not vindicate adequately the interests to which Article I, section 9, speaks.”). But a good faith exception does not necessarily follow from consideration of deterrence as a justification for an exclusionary rule. In any event, the purpose and flagrancy of an officer’s conduct already is routinely taken into account, and that strikes me as pretty much the same thing as inquiring into the officer’s good faith.
As I noted at the outset, one problem with the court’s exclusive focus on personal rights as the basis for its exclusionary rule arises when a defendant consents to a warrant-less search or seizure that is in some way causally connected to prior police misconduct. In my view, the personal rights explanation for exclusion fails to explain why a defendant’s voluntary consent does not suffice to justify the search.
The court’s usual explanation is that the prior illegality can “taint” the otherwise perfectly voluntary consent. But the test for the existence of such a taint has nothing to do with whether the police misconduct actually affected the consent in any way. In Hall, for example, a majority of this court declared that, even in a case in which the defendant voluntarily consents to a search, prior police misconduct *102 will require the exclusion of evidence obtained from that search if that misconduct “significantly affected” the defendant’s consent. 339 Or at 34-35. But the three factors that the court listed as an aid to determining whether the misconduct “significantly affected” the defendant’s consent— temporal proximity, intervening circumstances, and other circumstances that mitigate the misconduct — need not have anything whatsoever to do with whether the misconduct actually affected the defendant’s consent at all, much less substantially so.
Part of the problem, I think, is that the court has borrowed its analysis for excluding otherwise voluntary confessions from Fourth Amendment cases such as Brown v. Illinois, 422 US 590, 95 S Ct 2254, 45 L Ed 2d 416 (1975), and Wong Sun v. United States, 371 US 471, 83 S Ct 407, 9 L Ed 2d 441 (1963). See, e.g., Hall, 339 Or at 21 (relying on Wong Sun); State v. Painter, 296 Or 422, 425, 676 P2d 309 (1984) (relying on Brown and Wong Sun); State v. Wolfe, 295 Or 567, 572, 669 P2d 320 (1983) (relying on Brown). The federal “fruit of the poisonous tree” cases, however, have been predicated expressly on the importance of deterrence as a justification for disregarding an otherwise voluntary consent. Brown, for example, went to some lengths to emphasize that its exclusion of evidence in cases such as Wong Sun was intended to effectuate “the broad deterrent purpose” of the exclusionary rule. 422 US at 599-600.
Indeed, the factors that Brown mentioned, and that this court has borrowed — temporal proximity, the presence of intervening circumstances, and the purpose and flagrancy of police misconduct — make much better sense in the context of a policy of deterrence. Each goes to the character of the police actions, regardless of their actual effect on a defendant’s decision to consent to a search. Small wonder, then, that this court has struggled to explain its decisions when it is attempting to apply the federal analysis while, at the same, rejecting the rationale for it.
If this court wishes to better explain the exclusion of evidence procured from consent searches based on prior police misconduct, it seems to me that it will have to reconsider its categorical abjuration of deterrence as a *103 justification for its exclusionary rule and include deterrence as an additional justification for the rule. I suggest that, in an appropriate case, the court should do that. Until then, I join the majority, which gives greater attention to the role of a defendant’s consent to a warrantless search.

 I am aware of only two states — New Mexico and Pennsylvania — that have rejected deterrence as a justification for a state exclusionary rule. See State v. Gutierrez, 116 NM 431, 446, 863 P2d 1052 (1993) (objective of the exclusionary rule is not to deter police misconduct but “to effectuate in the pending case the constitutional right of the accused to be free from unreasonable search and seizure”); Com. v. Valentin, 2000 PA Super 63, 748 A2d 711, 713, appeal denied, 564 Pa 731, 766 A2d 1247 (2000) (“While the sole purpose of the exclusionary rule under the Fourth Amendment is to deter police misconduct, Article I, section 8, [of the Pennsylvania Constitution] is meant to embody a strong, abiding, and distinctive notion of privacy.”).

 See also State v. Bolt, 142 Ariz 260, 266 n 7, 689 P2d 519 (1984) (“There are other reasons justifying the existence of the exclusionary rule. When officers *99 purposefully violate the constitution to obtain evidence to use at trial, ‘the success of the lawless venture depends entirely on the court’s lending its aid by allowing’ the use of the evidence. If the law does not permit the gathering of the evidence, the court should not ‘have a hand in such dirty business’ by allowing its use. Further, it would be a ‘pernicious doctrine’ to declare that the government should ‘commit crimes’ in order to secure the conviction of criminals.”); Watson v. State, 302 Ga App 619, 624, 691 SE2d 378 (2010) (“The rationale behind the exclusionary rule is to prevent the State from capitalizing on police misconduct to put the prosecution in a better position than it would have been if no illegality had occurred.”); People v. McGee, 268 Ill App 3d 32, 43, 644 NE2d 439 (1994) (“In vindicating individual rights, the exclusionary rule encourages compliance by the legislative and executive branches and induces scrutiny and guidance from the judicial branch ** * *. It encourages the legislature to enact constitutional laws and prevents legislative ‘grace’ periods during which large classes of constitutional violations may freely take place. It encourages the executive branch to uphold its oath to support the Illinois Constitution while carrying out the duties of the particular office. It permits courts to honor the Constitution other than merely to note its breach.”); State v. Coleman, 466 So 2d 68, 72 (La App 2 Cir 1985), writ denied, 467 So 2d 542 (La 1985) (“The primary purpose of the exclusionary rule * * * is to deter official misconduct by government agencies in the administration of the criminal law. * * * Another recognized purpose of the exclusionary rule is that judicial integrity will be best served by denying the State the use of evidence unconstitutionally obtained or seized from a citizen or from his home.” (Emphasis in original.)); Com. v. Brown, 456 Mass 708, 715, 925 NE2d 845 (2010) (“One of the purposes * * * is the deterrence of police [mis] conduct * * *. Another is the protection of judicial integrity through the dissociation of the courts from unlawful conduct.”); State v. Panarello, 157 NH 204, 207, 949 A2d 732 (2008) (“The purpose of the exclusionary rule is three-fold. * * * It serves to: (1) deter police misconduct; (2) redress the injury to the privacy of the victim of the unlawful police conduct; and (3) safeguard compliance with State constitutional protections.”); State v. Harris, 211 NJ 566, 590, 50 A3d 15 (2012) (“The purpose of the rule is two-fold: 1) to assure that the law does not provide an incentive for police misconduct and 2) to protect judicial integrity.”); Miles v. State, 1987 OK CR 179, 742 P2d 1150, 1152 (1987) (“The purpose of the exclusionary rule is to deter police misconduct and to provide an effective remedy for unreasonable searches and seizures.”); State v. Patton, 898 SW2d 732, 734 (Tenn Crim App 1994) (“The dual purposes of the exclusionary rule are to protect fundamental individual liberties and to deter improper police conduct.”); State v. Felix, 339 Wis 2d 670, 695, 811 NW2d 775 (“The purposes of the exclusionary rule are to deter police misconduct and ensure judicial integrity by refusing to rely on evidence obtained through police misconduct * * *, but the primary purpose is deterrence.”).