234　　　　　　　　　January 2, 2025　　　　　　　　　No. 6

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ERIK SHANE ZWEYGARTT,
*Defendant-Appellant.*

Washington County Circuit Court
21CR16945; A178190

Erik M. Bucher, Judge.

Argued and submitted January 19, 2024.

Joshua B. Crowther, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Peenesh Shah, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Pagán, Judge, and Mooney, Senior Judge.

PAGÁN, J.

Reversed and remanded with instructions to merge convictions on Counts 1 and 2 into one conviction for using a child in a display of sexually explicit conduct; remanded for resentencing; otherwise affirmed.

## PAGÁN, J.

Defendant appeals from his conviction following a bench trial for two counts of using a child in a display of sexually explicit conduct, ORS 163.670, and five counts of second-degree encouraging child sex abuse, ORS 163.686. The convictions arose from illicit images of a minor victim, M, discovered on a smartphone that defendant gave to M. Defendant raises five assignments of error. The first three assignments relate to the trial court's denial of defendant's three motions to suppress evidence taken from the smartphone. In his fourth assignment of error, defendant asserts that the trial court erred in not merging all counts of using a child in a sexual display. In his fifth assignment of error, defendant argues that the sentence is disproportionate. Because we conclude that defendant abandoned any possessory or privacy interest in the smartphone when he gave it to M, we conclude that the trial court did not err by denying the motions to suppress the smartphone evidence. With regards to merger, the state concedes that the trial court should have merged the counts. We accept the concession and remand for resentencing. Because we remand for resentencing, we do not reach the fifth assignment of error.

We review a trial court's ruling on a motion to suppress for errors of law, and we are bound by the trial court's findings of fact, provided they are supported by constitutionally sufficient evidence. *State v. Hayes*, 272 Or App 1, 3, 353 P3d 1237, *rev den*, 358 Or 145 (2015). "If the trial court did not make findings on particular issues and there is conflicting evidence in the record, 'we will presume that the facts were decided in a manner consistent with the court's ultimate conclusion.'" *Id.* (quoting *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993)). We examine the facts with that standard of review in mind.

In 2020, M's mother (mother) searched M's room and found a smartphone that mother did not recognize. The smartphone was in poor condition, cracked, and had difficulty powering on. With the help of her partner, mother guessed the phone's simple password. Upon searching the phone, mother found sexually explicit pictures of M, and called the police.

An officer talked to mother, and mother willingly gave the smartphone to the officer for investigation, along with the password. Mother noted that she had also found a logged-in digital wallet[1] profile on the phone, an email, phone number, address, paperwork for Clackamas County Probation, and tax documents for a building in Beaverton, which detectives later determined all pointed towards defendant. Without a warrant, the officer informally searched the phone,[2] and found pre-recorded lewd Snapchat[3] videos of M saved to the phone. The officer also found non-lewd photos of defendant on the phone, as well as the Cash App profile, email, and physical address of defendant. The officer then placed the smartphone in airplane mode and sent it to the police department as evidence.

A detective determined that defendant lived in the same neighborhood as M. The detective then confronted M about the smartphone's origins and asked for her consent to search the phone. M was in juvenile detention at the time of questioning. M denied that the smartphone had come from defendant. M did not initially object to the detective searching the smartphone in front of her but objected and expressed disgust once the detective started showing her the lewd images on the phone. At the suppression hearing, M acknowledged that the smartphone had come from defendant.[4]

M testified that defendant had given her the smartphone for emergency use, because mother had taken M's smartphone, and M felt unsafe at home. But M also testified that defendant put no restrictions on her use of the smartphone. Thus, while M understood the smartphone to be only

---

[1] In this case, defendant was logged into Cash App. Cash App is a digital wallet service used for banking and money transfer. Isabel Peña Alfaro, *What is Cash App & How Does It Work?,* Time (August 23, 2024) https://time.com/personal-finance/article/what-is-cash-app/.

[2] The parties dispute the purpose of this search. The state frames it as a "confirmatory search," in that the officer was confirming what mother had told them. Defendant argues that the search went well beyond what mother had disclosed to the officer.

[3] Snapchat is a picture- and video-focused messaging app.

[4] The suppression hearing occurred on the first day set for trial. The bench trial began on the second day set for trial, at which point defendant stipulated to admitting all testimony from the prior day's suppression hearing. We thus refer to testimony which occurred chiefly during the suppression hearing.

for emergency use, there were no restrictions on how she could use it in an emergency. Defendant characterized it as "an extra phone" to M, and M testified that defendant provided the smartphone in casual circumstances. M and mother testified that this was not the first time that mother had taken M's phone, and that M had previously procured replacement phones from friends.

The smartphone was not in service with a communication provider, and only worked on a local wireless network. M testified that she never used it because it did not work. M thought defendant had probably given her the passcode to it. After giving the smartphone to M, defendant had no further contact with M because M was soon after sent to juvenile detention. At any rate, defendant did not request the smartphone back.

Seventy-three days after the warrantless first search, detectives obtained a warrant and searched the smartphone again, but found no new incriminating evidence. Detectives determined that the images of M had been saved to the smartphone before defendant gave the smartphone to M and had all been received on the same night. The timing of messages on the smartphone showed that defendant first solicited lewd images at 8:52 p.m., and again at 10:13 p.m., but the first lewd images were not sent by M until after 10:13 p.m. Based on the evidence discovered on the phone, and interviews with mother and M, defendant was indicted on five counts of using a child in a display of sexually explicit conduct (Counts 1 to 5), ORS 163.670, and five counts of encouraging child sexual abuse in the second degree (Counts 6 to 10), ORS 163.686.

Defendant moved, three separate times, to suppress the contents of the phone. The trial court denied each of those motions. In the first motion, defendant challenged the warrantless searches, and focused on whether defendant had abandoned the phone, whether defendant's privacy rights were extinguished when mother looked at the phone, and whether mother or M consented to a search of the phone. The first motion also challenged the subsequent warranted search, arguing that it was not protected by the inevitable discovery rule. The second motion challenged the subsequent

search warrant for the smartphone and the affidavits resulting from the warranted smartphone search.[5] The third motion, filed shortly before trial, challenged the 73-day delay in seeking a warrant. The first two motions were denied on the merits, and the third was denied as untimely.

Defendant was found guilty on each count. Counts 2, 3, 4, and 5 were merged, leaving convictions on Counts 1, 2, and 6 to 10. The court reasoned that defendant had induced M to Count 1 at 8:52 p.m., and had induced her again as to Counts 2, 3, 4, and 5 at 10:13 p.m. The first images were not sent until after 10:13 p.m. Because Counts 1 and 2 were both major sex crimes, defendant was treated as a repeat offender under ORS 137.690 and sentenced to a 300-month minimum sentence. Defendant timely appealed.

Defendant raises a series of arguments on appeal regarding the smartphone and the motions to suppress, including that mother could not consent to a search of the smartphone, that M lacked authority to consent, that the warrant was unlawful, and that the delay in getting a warrant after seizing the smartphone was unlawful. However, as a threshold issue, we must determine whether defendant retained any privacy interest in the phone that would serve as a basis for him to challenge the evidence. We ultimately conclude that defendant abandoned the smartphone when he gave it to M, and therefore cannot challenge the evidence obtained from the phone.

Article I, section 9, of the Oregon Constitution protects individuals against unreasonable searches and seizures. *State v. Fair*, 353 Or 588, 602, 302 P3d 417 (2013); Or Const, Art I, § 9 ("No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure * * *."). For purposes of Article I, section 9, a "search" occurs when "governmental action invades 'a protected privacy interest.'" *State v. Lien/ Wilverding*, 364 Or 750, 759, 441 P3d 185 (2019) (quoting *State v. Newcomb*, 359 Or 756, 764, 375 P3d 434 (2016)).

---

[5] The second motion also challenged a separate warrant for a journal written by M, which incriminated defendant. On appeal, defendant contests the search of the journal only insofar as being fruit of the poisonous tree of the search of the smartphone. Because we conclude that the court properly admitted the evidence from the phone, the search of the journal was not tainted.

When a person abandons an interest in property however, they lose that protected privacy interest:

> "If a person has abandoned any and all constitutional interest in an item of property, the police need not obtain a warrant to search or seize that property—and, if the police do obtain a warrant, as a precaution or otherwise, the person who abandoned their interest is not in a position to challenge the warrant."

*State v. Laney*, 318 Or App 509, 515, 507 P3d 308, *rev den*, 370 Or 197 (2022).

*Laney* identified six factors that can be used to determine if a piece of property was abandoned,[6] though not all six factors will always apply. *Id.* at 516. Relevant here are factors four and six: "(4) whether the defendant left the property under circumstances that make it objectively likely that others will inspect it; *** [and] (6) whether the defendant gave up his rights to control the disposition of the property." *Id.* (citing *State v. Ipsen*, 288 Or App 395, 399-400, 406 P3d 105 (2017)).[7] The ultimate determination is still based on a totality of the circumstances. *Laney*, 318 Or App at 517.

Whether defendant's transfer of the smartphone amounts to abandonment presents issues of both fact and law:

> "Determining 'whether a defendant has relinquished a constitutionally protected interest in an article of property involves both factual and legal questions, which this court reviews in the same manner that it reviews other search or

---

[6] The trial court was hesitant to use the term "abandoned," noting that it did not quite capture defendant's conduct in giving the smartphone to M. The trial court settled on the term "gift." We agree with defendant that the trial court's finding that defendant gifted the smartphone does *not* constitute a historical fact which requires us to conclude that the smartphone was abandoned. We use "abandoned" as a legal term of art to indicate that a person no longer has a constitutional interest in an item, acknowledging that the common definition of abandoned may not always fit the legal definition.

[7] The other factors are:

"(1) whether the defendant separated himself from the property as a result of police instruction or illegal police conduct; (2) whether the defendant left the property on public or private property; (3) whether the defendant attempted to hide the property or otherwise manifest to the police an intention of maintaining control over it; *** [and] (5) whether the defendant placed the item in plain view."

*Laney*, 318 Or App at 516.

seizure questions arising under Article I, section 9.' [*State v. Cook*, 332 Or 601, 607, 34 P3d 156 (2001)]. We defer to the trial court's findings of fact if supported by the evidence but determine as a matter of law whether those facts are sufficient to constitute abandonment. *State v. Lewis*, 306 Or App 492, 499, 474 P3d 907 (2020). It is the state's burden to prove by a preponderance of the evidence that a defendant abandoned his interest in a given item of property. *Id.*"

*Laney*, 318 Or App at 516. The question thus becomes: did defendant's transfer of the smartphone to M, without restrictions, constitute an abandonment of defendant's property interest in the phone?

Examining the fourth abandonment factor, in giving the smartphone to M, it was objectively likely that M or mother might examine its contents, particularly when defendant expected M to use the phone. *Laney*, 318 Or App at 516. Defendant did not tell M she could not go through the phone. Defendant provided no restrictions on the use of the phone. Regarding mother's access to the phone, by giving the smartphone to a minor child, defendant created a high risk that the minor's parents would discover and inspect the device. Indeed, the evidence showed that defendant gave M the password to the smartphone and was aware that mother had previously confiscated her cell phone.

The parties place greater weight on the sixth abandonment factor. The state argues that defendant had gave the right to control the disposition of the smartphone because he gifted it to M. Defendant argues that even if he lacked a possessory interest, he maintained a privacy interest in the phone.

Defendant points to *Lien/Wilverding*, where the court emphasized that the right to privacy is "determined by social and legal norms of behavior," not just mere property rights. 364 Or at 760. *Lien/Wilverding* reversed the longstanding rule that an individual has no privacy interest in their garbage and concluded that society does expect that their garbage will remain secret. *Id.* Defendant argues that he did not give up his protected interest in the smartphone merely by giving it to M, and that the privacy-norms analysis of *Lien/Wilverding* supports a determination that

the presence of his personal information on the smartphone created a continuing privacy interest.

*Lien/Wilverding* reflected that there is a social expectation of privacy in one's garbage, *i.e.*, that a person would be "outraged" if someone went through their garbage. *Lien/Wilverding*, 364 Or at 761. We agree with the state that, unlike garbage, there could be no social expectation of privacy in an item that was intentionally given to another for that person's essentially unrestricted use. As will be discussed in further detail below, defendant did not go so far as the defendant in *Laney* and ask M to destroy the phone, but he still effectively disclaimed ownership of it.

Most importantly to the *Lien/Wilverding* norms analysis, there is no social or legal norm that protects defendant's privacy interest in providing another person total access to a smartphone without any noted restriction, particularly when the recipient is another person's child. To the contrary, children typically have subordinate rights compared to adults. *See State v. A. S.*, 296 Or App 722, 735, 443 P3d 618, *rev den*, 365 Or 502 (2019) (a juvenile's grandmother, despite not being legal guardian, retained a superior right to allow police to search the juveniles room in her house over the juvenile's objection). Parents derive a "measure of control over all aspects of their children's lives, activities, effects, and living quarters." *State v. Carsey*, 295 Or 32, 42, 664 P2d 1085 (1983). "A parent has manifold duties toward his or her minor children, duties which give rise to correlative rights of control over the child." *Id.* That relationship does not automatically provide consent for searches, and indeed the Supreme Court concluded that the parent-child relationship was insufficient for consent in *Carsey* when applied to a 19-year-old defendant. But *A. S.* and *Carsey* show that privacy norms are lessened, not heightened, when it comes to children. While there could be some circumstances in which a person retains a privacy interest in an item given to another person's child, there is certainly no such *norm* sufficient to create such a right under *Lien/Wilverding*.

In the alternative, defendant argues that we should instead characterize the transfer of the smartphone to M as

a bailment, which would mean that he retained a possessory interest in it. A bailment is "[a] delivery of personal property by one person (the *bailor*) to another (the *bailee*) who holds the property for a certain purpose * * *." *Black's Law Dictionary* 169 (10th ed 2014); *Laney*, 318 Or App at 519 n 6 ("A bailment is 'a delivery of something of a personal nature by one party to another, to be held according to the purpose or object of the delivery, and to be returned or delivered over when that purpose is accomplished.'" (quoting *Kantola v. Lovell Auto Co.*, 157 Or 534, 538, 72 P2d 61 (1937))).[8] In *Laney*, the defendant gave five computers to a family member, with the expectation that the family member would recycle the computers and destroy their hard drives. *Id.* at 511. The family member did recycle the computers, but did not destroy the hard drives as asked, and turned them over to police six years later after searching the drives and finding a lewd image of a child on one. *Id.* at 513. The defendant in *Laney* did not contemporaneously express an expectation of return, nor had he reasserted control over the hard drives in the following six years. *Id.* at 519. The defendant argued that we should have treated his transfer of the computers to the family member as a bailment, but we concluded that there was no bailment under the facts. *Id.* at 519 n 6. In this situation, we also conclude that the facts do not give rise to the legal relationship of a bailment.

In support of the bailment theory, defendant points to testimony by M that the smartphone was only for emergency purposes and that she would have returned the smartphone if defendant had asked for it back. But even if M would have returned the smartphone to defendant if asked, that does not mean that defendant retained a legal interest, *vis-à-vis* a bailment, in the phone. *Black's Law Dictionary* at 169 ("A bailment relationship can be implied by law whenever the personal property of one person is acquired by another and held under circumstances in which *principles of justice* require the recipient to keep the property safely and return it to the owner." (quoting 8A Am. Jur. 2d *Bailment* § 1 (1997)

---

[8] Regarding M's age, a minor can accept a bailment, despite their limited powers of contract. *See Kantola*, 157 Or at 541 (15-year-old who was test driving a vehicle was a bailee); *cf. Bagley v. Mt. Bachelor, Inc.*, 258 Or App 390, 398, 310 P3d 692 (2013), *rev'd on other grounds*, 356 Or 543, 340 P3d 27 (2014) (collecting cases on contracts entered into during minority).

(emphasis added))). M's intent to return the smartphone is not dispositive of whether defendant's initial transfer created a bailment, unless M's intent was based on what defendant said at the time of the transfer. M's testimony that she would have given it back is not matched by defendant's conduct at the time he transferred the phone. Defendant gave a borderline non-working smartphone to M, without restriction as to the manner of its use—as one would gift a secondhand item. There was no time or mechanism of return agreed upon. Indeed, as in *Laney*, defendant did not contemporaneously express an expectation of return.

Insofar as defendant might have provided a restriction on the *time* of the phone's use (only in emergencies), that alone is not an objective expression that defendant expected the smartphone back, nor did it establish the time or mechanism of the phone's return.[9] On that issue, defendant points to *State v. Tanner*, 304 Or 312, 323, 745 P2d 757 (1987), in which the defendant was found to have a protected privacy interest in contraband that he had bailed to a couple whose home was unlawfully searched. But in *Tanner*, the bailed contraband was collateral for a loan, and thus the ownership interest clearly remained with the defendant. *Id.* Here, there was no such clarity of property interest provided by an emergency use restriction. Thus, we decline to characterize the transfer as a bailment.

Short of a bailment, defendant argues that he did not relinquish ownership of the smartphone because M, mother, and the investigators instinctively understood that the smartphone in some sense belonged to defendant. But a subsequent acquiree of property need not be able to assert an ownership right in order for the original owner to have abandoned it. *State v. Belcher*, 89 Or App 401, 404, 749 P2d 591, *aff'd* 306 Or 343, 759 P2d 1096 (1988).

We thus determine that both abandonment factor four and factor six weigh in favor of abandonment. Given the totality of the circumstances, we accordingly agree with the

---

[9] M did not testify about the specific conversation she had with defendant. M merely noted that she understood the smartphone to be for emergency use. That leaves open the possibility that defendant did *not* place a restriction, and had merely been providing advice to M, such that she would not get caught using a smartphone of unknown origins.

trial court's conclusion that defendant abandoned his constitutionally protected interest in the smartphone. Because defendant retained neither a possessory interest, nor a privacy interest in the smartphone, he cannot challenge the search of the smartphone. Thus, the trial court did not err by denying all three motions to suppress.

We now turn to assignment of error four, regarding merger. Defendant challenges the incomplete merger of the five counts of using a child in a sexual display. When multiple counts stem from the same criminal episode, they must be merged unless there has been a "sufficient pause" between them, "to afford the defendant an opportunity to renounce the criminal intent." ORS 161.067(3); *see State v. Bradley*, 307 Or App 374, 379, 477 P3d 409 (2020), *adh'd to as modified on recons*, 309 Or App 598, 483 P3d 717 (2021) (elaborating on what constitutes a sufficient pause). The state concedes that Count 1 should have been merged with the rest of the counts because the first images were not sent until after defendant began the conduct underlying the other four counts of using a child in a sexual display, meaning there was not a sufficient pause between them. We accept the state's concession and agree that the trial court erred when it failed to merge the guilty verdicts on Counts 1 and 2. We reverse and remand for resentencing. Because we remand for resentencing, we need not reach defendant's fifth assignment of error dealing with the proportionality of the mandatory 300-month sentence.

Reversed and remanded with instructions to merge convictions on Counts 1 and 2 into one conviction for using a child in a display of sexually explicit conduct; remanded for resentencing; otherwise affirmed.