No. 914 October 22, 2025 345

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

REZA CHEHRAZI MARDANI,
*Defendant-Appellant.*

Multnomah County Circuit Court
19CR04482; A180521

Benjamin N. Souede, Judge.

Argued and submitted September 25, 2024.

Neil F. Byl, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Peenesh Shah, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

POWERS, J.

Reversed and remanded.

**POWERS, J.**

Defendant appeals from a judgment of conviction for murder in the second degree, ORS 163.115, attempted murder, ORS 161.405, assault in the first degree, ORS 163.185, and aggravated animal abuse in the first degree, ORS 167.322.[1] The case arises out of an incident in which the state alleged that defendant shot two people, who lived in a camper on defendant's property. One person died, the other was seriously injured, and the state also alleged that defendant shot and killed their dog. In his first assignment of error, defendant contends that the trial court erred in denying his motion to suppress the state's firearms analysis due to an untimely warrant. We conclude that the court did not err in denying the motion because there is evidence to support the trial court's finding that defendant gifted a cabinet that included the firearm, and that defendant abandoned any constitutionally protected interests in the firearm. In his second and third assignments, defendant argues that the trial court erred in denying defendant's motion to limit or bar firearms identification evidence. The question raised by the second and third assignments has been resolved by our recent decision in *State v. Adams*, 340 Or App 661, 572 P3d 291, *rev allowed*, 374 Or 419 (2025), and accordingly we reverse and remand on that issue.

We begin with the first assignment of error and review the denial of a motion to suppress for errors of law. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). In so doing, we are bound by the trial court's findings of fact if they are supported by constitutionally sufficient evidence in the record. *Id.* If the court did not make express findings of fact on all pertinent issues, we presume that the facts were decided in a manner consistent with the court's ultimate conclusion. *Id.* We set forth the facts relevant to the first assignment of error with that standard of review in mind.

Following defendant's arrest, his niece, Neffendorf, had power of attorney over defendant's property while

---

[1] ORS 163.115, ORS 161.405, and ORS 163.185 have been amended since the underlying conduct in this case. Or Laws 2019, ch 635, § 4; Or Laws 2019, ch 635, § 15a; Or Laws 2021, ch 480, § 5; Or Laws 2023, ch 498, § 24. Because those amendments do not affect our analysis, we refer to the current version of the statutes in this opinion.

he was in custody. Another person, Mayes, was living on defendant's property during that time. The property had two houses on it in addition to the trailer that Mayes was staying in. Mayes and her fiancé had an agreement with Neffendorf that they would live on the property and clean it up. While Mayes was staying on the property, she was hauling garbage off the property weekly, and Neffendorf came to the property multiple times a week to search for items, including identification and financial documents for defendant. Neffendorf told Mayes that she was looking for a firearm and that she was trying to find the firearm so that she could "get rid of it" in order to "save" defendant. Neffendorf further told Mayes that she was going to draw a map of the property and that she was going to visit defendant in jail to show him the map so that he could point to the location of the firearm.

At one point, Mayes and Neffendorf had a conversation about Mayes keeping some of defendant's personal property. Mayes succinctly described the conversation: "I had wanted a metal cabinet. And she [Neffendorf] said I could have it. That was pretty much it." Mayes further explained that the cabinet was in one of the houses on the property and that it was "an older metal cabinet with a lot of drawers and, like, cubby holes." Mayes's fiancé cleaned out the cabinet—washing the sides and drawers—and the cabinet contained "miscellaneous nuts, and bolts, and stuff in it."

During one of Neffendorf's visits to the property, Mayes observed Neffendorf and another person, Hannah, looking through the metal cabinet. At that point the cabinet was outside laying on its side behind one of the houses, and Hannah had pulled out all the drawers and dismantled it. Mayes recalled that it surprised her that Hannah was disassembling the cabinet because "the cabinet was mine." She then saw the "butt end" of a firearm in Hannah's hand and heard Neffendorf exclaim that they "saved" defendant. On cross-examination, Mayes noted that the firearm that she saw in Hannah's hand was wrapped up in a "cloth of some sort." Mayes did not see either Hannah or Neffendorf take the firearm with them or put it back in the cabinet. After they left the property, Mayes went to look at the cabinet and

saw a firearm sitting on the ground next to it. Mayes then called the police, and the police seized the firearm.[2] The police did not obtain a warrant for the firearm until approximately 60 days after seizing it.

At trial, defendant argued that all ballistics and firearms analysis relating to the firearm should be suppressed because of the untimely warrant, relying on *State v. Thompson*, 370 Or 273, 518 P3d 923 (2022). After hearing the parties' arguments on the motion, the trial court determined that defendant's constitutional rights were not implicated by the police taking the firearm. Specifically, the trial court concluded, in part:

> "[T]he evidence establishes that the gun came from that file cabinet and fell to the ground out of that cabinet just prior to Ms. Mayes finding it and calling the police about it.
>
> "And that at that time, Ms. Mayes owned the filing cabinet. That she had actual authority for Article 1, Section 9, purposes, and both actual and apparent authority under the Fourth Amendment. Such that any interest that [defendant] may have had—had in the gun, if indeed he did have—so have had been extinguished, and that this was essentially Ms. Mayes's gun to do with what she wanted because it was her filing cabinet to do what she wanted.
>
> "* * * * *
>
> "I agree with the State that, in this case, the record is such that the State has proved that this firearm was taken not pursuant to plain view or anything else, but rather with the consent of, and indeed, at the request of Ms. Mayes."

On appeal, the challenge is considerably more narrow than the question addressed by the trial court. That is, the parties on appeal do not dispute that Neffendorf gifted Mayes the cabinet and that Neffendorf had the authority to do so because defendant had given her power of attorney to clean up his residence and dispose of his personal property. Defendant's focused argument on appeal is that, "in gifting the cabinet to Mayes, Neffendorf did not also gift

---

[2] Although the state's theory was that two firearms—one that was found and one that was never found—were used during the incident, we focus on the firearm that was seized by police. That is, the parties' arguments, the trial court ruling, and our analysis concern only the firearm that was on the ground next to the cabinet.

the firearm that, unbeknownst to Neffendorf, was hidden in the cabinet." (Emphases omitted.) Defendant contends that the totality of the circumstances demonstrates that, at the time Neffendorf gifted Mayes the cabinet, Neffendorf did not know that the firearm was in the cabinet and that defendant was still asserting control over the firearm through Neffendorf. Thus, according to defendant, there was insufficient evidence in the record to support the trial court's finding that Neffendorf gifted the firearm to Mayes. Finally, although defendant does not directly challenge the trial court's finding that Neffendorf gifted the cabinet, defendant asserts that the state failed to prove that he "unequivocally relinquished all constitutionally protected interests in the" firearm. The state remonstrates that the record supports the trial court's finding that Neffendorf intended to gift the firearm to Mayes and that defendant had given up all interests—that is, possessory and privacy interests—in the firearm.

Article I, section 9, of the Oregon Constitution protects people against unreasonable searches and seizures. "If a person has abandoned any and all constitutional interest in an item of property, the police need not obtain a warrant to search or seize that property[.]" *State v. Laney*, 318 Or App 509, 515, 507 P3d 308, *rev den*, 370 Or 197 (2022). Determining whether a defendant has relinquished a constitutionally protected interest in property involves both factual and legal questions, which we review in the same manner that we review other search or seizure questions arising under Article I, section 9. *Id.* at 516. As noted earlier, we defer to the trial court's findings of fact if supported by evidence in the record, and we review for errors of law whether those facts are sufficient to constitute abandonment. *Id.* Here, we first determine whether the record supports the trial court's finding that defendant gifted the firearm to Mayes. Second, if so, we consider whether the totality of the circumstances supports the conclusion that defendant abandoned his interests in the firearm.

The first issue is whether there was sufficient evidence to support the trial court's finding that the state carried its burden to prove that defendant, through Neffendorf,

had gifted the firearm to Mayes. For an effective gift of personal property, "there must be a donative intent, coupled with the delivery of the subject of the gift to the donee with the intent that the donee have a present interest in it and an acceptance by the donee." *Kesterson v. Cronan*, 105 Or App 551, 554, 806 P2d 134, *rev den*, 311 Or 426 (1991). Whether a transfer of property constitutes a gift is a question of fact. *See Neel v. Lee*, 316 Or App 159, 173, 504 P3d 26 (2021), *rev den*, 369 Or 733 (2022) (explaining that in different settings, including marital property divisions, we routinely observe that the determination whether something is a gift is a "matter reserved to the factfinder" and that it "presents questions for a factfinder about [a person's] donative intent and whether the transfer was unconditional, leaving [the person who received the gift] with unlimited rights to use [the property] as they wish").

As we noted above, the parties do not dispute that Neffendorf effectively gifted the cabinet; the only issue is whether there was sufficient evidence to support a finding that the gift of the cabinet included the firearm. We conclude that there was sufficient evidence in the record for the trial court to have found that Neffendorf intended to gift the firearm to Mayes. The pertinent evidence came from Mayes's testimony. Mayes described the entirety of the interaction in which Neffendorf gifted Mayes the cabinet: Mayes testified that, "I had wanted a metal cabinet. And she said I could have it. That was pretty much it." There is no evidence in the record that Mayes and Neffendorf had discussed the contents of the cabinet or whether Neffendorf intended to retain any interest in any of the cabinet's contents. Moreover, there is evidence that Mayes saw Neffendorf and Hannah look through and disassemble the metal cabinet, that Mayes saw the "butt end" of a firearm in Hannah's hand, and that shortly thereafter, Mayes saw a firearm on the ground next to the cabinet. Thus, the record supports the trial court's findings that Neffendorf intended to gift the cabinet and its contents to Mayes and that the firearm had been hidden in the cabinet.

Although there is evidence that Neffendorf had been searching for the firearm to "save" defendant and it

could have been a permissible inference for the court to have found that Neffendorf did not intend to gift the firearm to Mayes, the trial court was not required to make that finding. That is, given the evidence adduced at the suppression hearing, the trial court was permitted to find—as it did—that Neffendorf had the donative intent to gift the cabinet and any contents—including the firearm—to Mayes. Accordingly, we are bound by that factual finding.

Next, we consider whether, under the totality of the circumstances—including the fact that the firearm was a gift—defendant abandoned his constitutionally protected interests in the firearm. Gifting an item of property, alone, may not be sufficient to support a conclusion that a defendant intended to abandon all constitutionally protected interests in the property. *See State v. Cook*, 332 Or 601, 607-08, 34 P3d 156 (2001) (explaining that, "because Article I, section 9, protects both possessory and privacy interests in effects, property law concepts of ownership and possession are relevant, though not always conclusive, in the factual and legal determination whether a defendant relinquished all constitutionally protected interests in an article of property"). When a defendant has abandoned property, we consider several factors to determine whether the defendant manifested an intent to relinquish the defendant's constitutionally protected interests in the property. *State v. Ipsen (A157082)*, 288 Or App 395, 399-400, 406 P3d 105 (2017) (setting forth six factors relevant to that determination). Application of the factors depends on the circumstances of the case, and not any one factor is dispositive. *Laney*, 318 Or App at 516. Ultimately, we examine the totality of the circumstances to determine whether a defendant abandoned all protected constitutional interests in the property. *State v. Kauffman*, 162 Or App 402, 407, 986 P2d 696 (1999), *rev den*, 329 Or 650 (2000).

Here, although defendant argues that each of the six factors weighs in favor of concluding that he did not abandon his interests in the firearm, we focus on only the fourth and sixth factors: "(4) whether the defendant has left his property under circumstances which objectively make it likely that others will inspect it" and "(6) whether the

defendant gave up his rights to control the disposition of the property."[3] *Ipsen (A157082)*, 288 Or App at 400 (internal quotation marks omitted); *see also Laney*, 318 Or App at 516-17 (explaining that, "because many abandonment cases involve situations in which a person is separated from property during a police encounter or leaves property in a public place, some factors are phrased in a way better suited to those scenarios, but they may still reflect underlying principles, in which case we look to the underlying principles") (footnote omitted); *State v. Zweygartt*, 337 Or App 234, 240, 562 P3d 1106, *rev den*, 373 Or 738 (2025) (examining only the fourth and sixth factors in a case where the abandoned property had been gifted to another person).

Starting with the fourth *Ipsen* factor, we conclude that, by gifting the cabinet to Mayes, it was objectively reasonable that Mayes would inspect it. The cabinet and the firearm were on the property where Mayes was staying, and there is evidence that Mayes did, in fact, inspect the cabinet when Mayes and her fiancé cleaned out the cabinet and found the "miscellaneous nuts, and bolts, and stuff in it." It is also objectively reasonable that when a person receives a gift of personal property, the person would inspect and examine the property. Moreover, we conclude that the sixth factor weighs heavily in favor of abandonment because, by gifting the cabinet—and its contents—without restrictions or conditions, defendant gave up his rights to control the disposition of the firearm.

Defendant maintains that he retained an interest in the firearm because he did not voluntarily separate himself from the firearm, he hid the firearm in a place where no one was likely to find it, and because he asserted his interests in the firearm up until it was discovered by directing Neffendorf to find and "get rid of" of the firearm so that it was not discovered by police. On that point, defendant

---

[3] The other factors are: "(1) whether the defendant separated himself from the property as a result of police instruction or illegal police conduct"; "(2) whether the defendant left the property on public or private property"; "(3) whether the defendant made any attempt to hide the property or in any other way manifest an intention to the police that he *** was attempting to maintain control over it"; and "(5) whether the defendant has placed the item in plain view." *Ipsen (A157082)*, 288 Or App at 399-400 (internal quotation marks omitted; ellipsis in original).

argues that the facts here are distinguishable from the facts of *Laney*.

In *Laney*, the defendant gave a few computers to a family member, with the expectation that the family member would dispose of the computers and destroy the hard drives. 318 Or App at 511-12. Six years later, the family member had still not destroyed the hard drives and ultimately gave the hard drives to the police. *Id.* at 513. We concluded that, although the defendant had expected the family member to destroy the hard drives, by turning over the computers the way he did and not following up about their destruction for six years, the defendant had abandoned his interests in the hard drives. *Id.* at 519-23. We disagree with defendant's argument that this case is distinguishable from *Laney* in the ways he asserts.

The facts in *Laney* present a closer call on the abandonment issue than this case because the defendant in *Laney* had given the computers to the family member with an expectation that the computers would be destroyed. Here, the trial court found that defendant gifted the cabinet and its contents to Mayes (albeit through Neffendorf) with no discussion about any restrictions or expectations. That is, there is no evidence that Neffendorf told Mayes that the gift was conditional or that Neffendorf wanted Mayes to return or otherwise do something with any contents of the cabinet. Given the record, we conclude that, under the totality of the circumstances, defendant abandoned his constitutionally protected interests in the firearm. Accordingly, the trial court did not err in denying his motion to suppress.[4]

We turn to the second and third assignments of error challenging the firearms identification evidence. Defendant contends that the trial court erred in denying his motion to limit or bar firearms identification evidence—in

---

[4] In his opening brief, defendant cites *Thompson*, where the Supreme Court assumed without deciding that police lawfully seized a phone under the exigent circumstances exception to the warrant requirement, and concluded that holding the phone for five days without a warrant was impermissible because neither the purported exigency nor any other exception to the warrant requirement applied. *See Thompson*, 370 Or at 283-84. That case is readily distinguishable from the circumstances presented in this case where the firearm was seized and held pursuant to Mayes's consent.

the form of expert testimony and reports—derived from the methodology developed by the Association of Firearm and Tool Mark Examiners (AFTE). In a recent decision, we agreed with the same arguments that defendant makes in this case, *viz.*, that the AFTE method does not meet the foundational requirements to be admitted as scientific evidence, and thus we conclude, based on our analysis in *Adams* and our review of the record in this case, that the firearms identification evidence was inadmissible. *See Adams*, 340 Or App at 700-01 (concluding that the state failed to meet its burden to establish the foundational requirements for scientific evidence under *State v. Brown*, 297 Or 404, 687 P2d 751 (1984), and *State v. O'Key*, 321 Or 285, 899 P2d 663 (1995), and that the AFTE firearms identification evidence was therefore inadmissible). Turning to harmlessness, we note that the state does not—as it did in *Adams*—advance an argument that the admission of the AFTE evidence was harmless as to any of the convictions. Having reviewed the record, including the state's closing argument before the jury, we conclude that admission of the challenged evidence was not harmless. *See State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) (observing that, in determining whether an error was harmless, "we do not determine, as a factfinder, whether the defendant is guilty" because such an inquiry would have us "engage improperly in weighing the evidence and, essentially, retrying the case, while disregarding the error committed at trial, to determine whether the defendant is guilty").

Reversed and remanded.